ATLANTIC & BIRMINGHAM RAILWAY CO. *v.* JOHNSON.

1. A suit was brought in the superior court of Berrien county for a personal injury, alleged and shown to have occurred in the city of Tifton, and after a recovery had been had and a motion for a new trial made, and while the motion was pending, the County of Tift was created and organized under an act of the legislature, so as to include Tifton within the new county; and suits pending in the original counties from which the territory was taken to create the new county, which would properly belong in such new county, were by law provided to be transferred thereto. After the motion for a new trial had been overruled, a bill of exceptions was tendered and the clerk of the superior court of the new county was directed to send up a transcript of the record to this court. *Held,* that a motion to dismiss the writ of error, on the ground that the bill of exceptions and transcript should have been transmitted by the clerk of the superior court of Berrien county, will be overruled.

2. Where two corporations effect a consolidation, and one of them goes entirely out of existence, and no arrangements are made respecting its liabilities, the resulting consolidated corporation will, as a general rule, be entitled to all the property and answerable for all the liabilities of the corporation thus absorbed.

3. There was no error in overruling the demurrer to the petition as amended.

4. In a suit on account of personal injuries, if witnesses are put under the rule and excluded from hearing the testimony, there is no error in refusing to allow a physician, summoned as a witness by the defendant, to hear the plaintiff's testimony, so that he may be used as an expert witness in regard thereto. The proper practice is to examine such expert witness by propounding hypothetical questions adjusted to the evidence in the case, or some of it.

5. If the defendant did not procure the evidence of a witness residing out of the county of the trial by depositions or interrogatories, but relied on his promise to be present and testify, and entered upon the trial without objection, the failure of the witness to attend, because of sickness in his family, furnished no ground for a new trial.

6. None of the other grounds of the motion require a new trial.

Submitted July 18, 1906.—Decided January 17, 1907.

Action for damages. Before Judge Mitchell. Tift superior court. November 17, 1905.

Emma Johnson brought an action for damages against the Atlantic & Birmingham Railway Company, alleging as follows: On May 20, 1903, she became a passenger on the train of the Tifton, Thomasville & Gulf Railway Company at Tifton, Georgia, to be transported to Moultrie, and paid her fare. The company did not transport her safely, as it undertook to do, and by law was bound to do. But before the train on which she was riding had left the yards of the company at Tifton it was derailed, and the car in which she was seated was dragged over and across the rails and cross-ties and partially overturned, throwing her violently against the seats and floor and causing her serious and permanent injuries. The car was overturned and dragged on its side more than a quarter of a mile before the engineer discovered that a portion of his train had been derailed and wrecked. Various acts of negligence were alleged, and the extent of the injury was described. On or about December 3, 1903, the Atlantic & Birmingham Railway Company "did absorb and consolidate, and merge [with] the Tifton, Thomasville & Gulf Railway Company, theretofore a railway corporation and a carrier of passengers for hire under the laws of said State, and is therefore liable for the contracts and torts, actions and doings of the said Tifton, Thomasville & Gulf Railway Company . . prior to its absorption of and merger with the Tifton, Thomasville & Gulf Railway Company." By amendment the following allegations were made: "That the said Atlantic & Birmingham Railway Company was, on or about the 3rd day of December, 1903, brought into existence by the consolidation of the Tifton, Thomas-

ville & Gulf Railway Company (theretofore a railroad corporation and a carrier of passengers for hire under the laws of Georgia), the Tifton & Northeastern Railway Company, and the Atlantic & Birmingham Railway Company; the three said railroad companies consolidating and merging, adopting the name of and now doing business under and in the name of the Atlantic & Birmingham Railway Company; that in their contract of merger no provision was made for the payment of the debts or the adjustment of the liabilities theretofore existing against the said Tifton, Thomasville & Gulf Ry. Co.; that therefore the said Atlantic & Birmingham Ry. Co. became and is under operation of law liable for the contracts, torts, actions and doings of the said T., T. & G. Ry. Co., made or committed prior to said merger and consolidation."

The defendant demurred to the petition, the demurrer was overruled, and the defendant excepted pendente lite. The answer denied the substantial allegations of negligence in the petition, and that the defendant was liable. In reference to consolidation, it contained the following statement: "That it admits as true the allegations made in the first and second paragraphs of plaintiff's petition, wherein it is alleged that defendant corporation, having an office and an agent in Berrien county, and that on or about the date named it did absorb by consolidation and merger the T., T. & G. Ry. Co., and that in so far as fixed by contract or operation of law it became liable for the contracts and torts of said T., T. & G. Ry. Co., but otherwise denies being responsible for the liabilities of the T., T. & G. Ry. Co. by contract or tort, or the actings and doings of said railway company in any way or manner whatever." It is unnecessary to set out the evidence. While it was conflicting, there was enough to show negligence in regard to the switch and the gauge of the road, and its condition at the point of derailment, and serious injury to the plaintiff. It also showed a consolidation and merger of the Atlantic & Birmingham Railway Company, the Tifton, Thomasville & Gulf Railway Company and the Tifton & Northeastern Railway Company into the Atlantic & Birmingham Railway Company. In regard to the second named company it was provided, that for its common stock $555,000 of the common stock of the consolidated company was set apart; to its second-mortgage bonds $277,500 of the common stock and $333,000 of the preferred stock of the consolidated company; and to the $555,000 of the first-

mortgage bonds of that company the same amount of first-mortgage bonds of the consolidated company. No provision was made covering any liability to the plaintiff, or for other debts or liabilities. The jury found for the plaintiff $5,000. The defendant moved for a new trial. The motion was overruled, and it excepted. A motion to dismiss the writ of error was made which is sufficiently dealt with in the opinion.

*J. L. Sweat, J. H. Merrill,* and *F. S. Harrell,* for plaintiff in error. *F. G. Boatright* and *W. H. Griffin,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The suit was brought in Berrien county. The petition alleged that the plaintiff became a passenger on the railroad at Tifton, Georgia, and that she was injured before the train had left the railroad yards at that place. The evidence showed that the injury occurred at Tifton. After the date of the verdict (July 17, 1905), and while the motion for a new trial was pending, the act of August 17, 1905 (Acts 1905, p. 60), was passed. It provided for the organization of Tift county from parts of the counties of Berrien, Irwin, and Worth, with Tifton as the county site; that the election of county officers should take place on the first Wednesday in October; and that the superior court should be held on the first Mondays in November and July. By the general act concerning the organization of new counties, passed August 21, 1905 (Acts 1905, p. 46), it was provided "that when a new county is organized, the jurisdiction of all suits pending in the county or counties from which said new county has been laid off, of which, under the constitution and laws of this State, the new county shall have cognizance, is transferred immediately to the corresponding courts in said new county," etc. The motion for a new trial was overruled on November 17. The bill of exceptions was signed on November 25, and commanded the clerk of the superior court of Tift county to certify and send up a transcript of the record. A motion was made to dismiss the writ of error, on the ground that the record should have been certified and sent up by the clerk of the superior court of Berrien county, where the injury occurred. The above statement of facts shows that the motion was without merit.

2. It was contended that the defendant was not liable for a tort committed by the Tifton, Thomasville & Gulf Railway Company before the consolidation. This point was raised in several differ-

ent ways, by demurrer, motion for nonsuit, and exception to the charge and to the verdict.   The suit was brought on February 11, 1904.   At that time there was no Tifton, Thomasville & Gulf Railway Company to be sued.   It had passed out of existence, and had been absorbed and merged into the defendant company.   There were no longer two artificial persons, but only one.   The corporate union was complete.   The suit had to be brought against the defendant or not at all.   In *Tompkins* v. *Augusta Southern R. Co.*, 102 *Ga.* 436, it was held that, "Where by reason of the consolidation of two corporations one of them goes entirely out of existence, and no arrangements are made respecting the liabilities of the one which ceases to exist, the corporation resulting from such combination will, as a general rule, be entitled to all the property and answerable for all the liabilities of the corporation thus absorbed." The same rule is announced in 1 Thompson on Corporations, § 372. See also §§ 365, 382.   In § 8341, the following clear and forcible statement is made:   "As already seen, the consolidation of two or more corporations is like the uniting of two or more rivers; neither stream is annihilated, but all continue in existence.   A new river is formed, but it is a river composed of the old rivers, which still exist, though in a different form.   So it is with a consolidated corporation.   A new corporation is formed, but not in the sense which works a destruction of the rights of action existing against the old one.   Independently of statute, the better view is that the new one is liable for any debts, obligations, or rights of action of any kind existing in favor of third persons at the time of the consolidation, and may be sued, at law or in equity, to enforce such rights and obligations without any agreement to become so answerable, and without any statute imposing the liability.   The consolidated corporation is answerable in a direct action for the torts, or the contracts of the constituent corporations," etc.   See the authorities cited in the notes to this section, and also Indianapolis, Cincinnati, etc. R. Co. *v.* Jones, 29 Ind. 465; Louisville, New Albany, etc. R. Co. *v.* Boney, 117 Ind. 501; Livingston County Agricultural Society *v.* Hunter, 110 Ill. 155; Berry *v.* Kansas City R. Co., 52 Kans. 759, 39 Am. St. R. 371, 381; and authorities cited in note to Morrison *v.* American Snuff Co., 89 Am. St. R. 637, 638 (79 Miss. 330). While the facts in *Tompkins* v. *Augusta Southern R. Co.*, supra, and in *Montgomery & West Point R. Co.* v. *Boring*, 51 *Ga.* 582, were

not identical with those in the present case, the reasoning throws strong light upon it.

Some of the authorities say that where provision has not been made for paying existing debts and liabilities of one of the constituent companies, the consolidated company is liable "at least to the extent of the assets of the absorbed corporation." This term of expression was used in the *Tompkins* case, supra, and was based on a quotation from 1 Thompson on Corporations, § 375, in which it is said: "Where several corporations are united in one, and the property of the old companies is vested in the new, the latter is liable in equity for the debts of the former, at least to the extent of the property received from them; and if it is also liable at law, the legal remedy is not exclusive." This mode of expression has been quite extensively copied, and I should hesitate to criticise even indirectly so able and learned a writer as Judge Thompson, and some of the able judges who have adopted a similar formula of words. But what is the exact meaning of the expression that the consolidated company is liable for the debts or torts of its constituent companies, "at least to the extent of the property received from them?" The use of the qualifying words "at least" shows that this was not intended as limiting entirely the liability. Those words indicate a minimum of liability. And where it is so carefully stated that this is the minimum, it can hardly be contended, with reason, that it was also the maximum. If the consolidated company is liable "at least" to this extent, how far is it liable at most? It will be noticed also that the learned author immediately follows the statement referred to by adding: "and if it is also liable at law, the legal remedy is not exclusive," thus indicating the view that there might be a legal remedy as well as an equitable one. This section, which was a statement of the result of certain authorities, should be construed in the light of the other sections already referred to, and of the statement at the close of section 373, where, after discussing the decision in Smith *v.* Chesapeake etc. Co., 14 Peters (U. S.), 45, 47, the author adds: "Modern holdings would, it is believed, on the general implications of the law, allow a party standing in such a position as the complainant in this case did, to bring a direct action against the consolidated company, and recover a judgment in personam." Viewed in the light of the various sections and of the authorities from which they are derived, some of which affirm the

right of direct suit against the consolidated company, in the absence of statutory provision to the contrary, and some of which affirm the right to pursue assets of the constituent company, on the ground "that a corporation can not give away its assets, to the prejudice of its creditors, but that a court of equity will follow such assets as a trust fund into the hands of any new custodian, the same not being a creditor or bona fide purchaser," may it not be said that either remedy may be open to the creditor, according to the facts of the particular case? Mr. A. C. Freeman, a careful and excellent annotator, says on this subject: "In some of the cases, to the statement that the new company will be answerable for the debts and liabilities of the old, there is added the qualification, 'at least to the extent of the property received by it from the old corporation.' . . The qualification seems, however, to have been employed from an abundance of caution, rather than because of any well-settled rule limiting the liability of the consolidated company for the debts of its constituents to the extent of the property received from them, and is not referred to in the great majority of cases." See note to Morrison *v.* American Snuff Co., 89 Am. St. R. 638, supra. It is possible also that some of the courts may have had in mind the existence of a limitation even upon legislative power to authorize a corporation to give away or merge its assets with those of another company so as to defeat creditors. It would put a severe burden upon a creditor of a corporation, whose demand, or the extent of whose damages, might amount to only a few dollars, where such corporation and another voluntarily merge into one and lose their previous identity, to hold that he can not sue the original corporation because it has passed out of existence, and that he can not sue the consolidated corporation and recover against it without alleging' and proving that the consolidated company had received assets from the constituent company (or, as contended here, net assets) sufficient to cover any amount which the jury might award him. To so hold would be practically to deny any remedy to a person having a small claim against a constituent company, or who had received a slight injury by reason of its tort, because, to discover all the assets of the constituent company and trace them into the hands of the consolidated company, as a condition precedent to bringing any suit or having any recovery, would involve a litigation out of all proportion to a small claim. If he must further show not only

what were the assets of the constituent company, but also what were its liabilities, and this must be determined before he can recover on a contract or for a tort, then every claimant against such constituent company would carry the burden of having to make an equitable accounting between the consolidated entity and its various component elements, in order to press the smallest suit or have the smallest recovery. It is to be borne in mind, too, that a large part of the assets of the constituent company may be in the form of cash, stocks, bonds, choses in action, and other property or franchises of a kind peculiarly within the knowledge of the companies themselves, and as to which the individual would be compelled to seek information by a bill for discovery, or some similar means. This can hardly be the law. Statutes authorizing mergers or consolidations, when valid, may prescribe terms thereof not violative of the constitution of the State or that of the United States. But, in the absence of statutory provision, the rule herein stated is believed to be supported both by reason and the weight of authority.

The provision in our statute authorizing a consolidation "upon such terms as may be agreed upon" was construed in *Tompkins* v. *Augusta Southern R. Co.,* supra, and was held not to authorize "an agreement between two companies, the effect of which would be to transfer to one of them all the property and franchises, and to invest it with all the rights, privileges and immunities of the other, free from all the liabilities, duties and obligations which the latter company owed to private individuals or to the public at large." In the case of *Hawkins* v. *Central R. Co.,* 119 *Ga.* 159, supra, the distinction between a sale of property by one corporation to another and a merger is pointed out. The case now under consideration is one of consolidation and merger, not of sale.

3. There was no error in overruling the demurrer to the petition as amended. The grounds of the demurrer, other than that already discussed, do not require special mention.

4. Complaint is made because the court did not allow a practicing physician, who had been summoned as a witness for the defendant, to hear the plaintiff's testimony, so that he might be used as an expert witness in regard thereto. It is not expressly stated that the witnesses had been put under the rule, or excluded from the court-room; but this may fairly be inferred; and the complaint is not that an exception was made against this witness, but that an excep-

tion was not made in his favor.  Expert witnesses who have not knowledge of the actual facts of the case may be examined by hypothetical questions adjusted to the case presented by the evidence, where the question involved is one of opinion.  If the expert gives his opinion on the basis of his own observation of facts personally known to him, this should be made to appear.  If not, the proper mode of examination is by hypothetical questions, so that the jury may know what facts are assumed to be true as a basis of the opinion.  A request somewhat similar to that made in the present case was preferred in *Choice* v. *State,* 31 *Ga.* 424, and it was held that "the court is not obliged to have the testimony taken down at the trial read over to medical witnesses to enable them to express an opinion relative to the sanity or insanity of the accused.  The proper course is, to ask their opinion, upon the facts, hypothetically stated."  See also, on this subject, *Taylor* v. *State,* 83 *Ga.* 647; *Herndon* v. *State,* 111 *Ga.* 178; *Potts* v. *House,* 6 *Ga.* 324; *Hook* v. *Stovall,* 30 *Ga.* 418; *Central Railroad* v. *Senn,* 73 *Ga.* 705; *Southern Bell Tel. Co.* v. *Jordan,* 87 *Ga.* 69; *Flanagan* v. *State,* 106 *Ga.* 109; *Griggs* v. *State,* 59 *Ga.* 738; *Central R. Co.* v. *McClifford,* 120 *Ga.* 90.

5. A medical witness for the defendant had promised to attend court for the purpose of testifying.  When the case was called, no motion for continuance or postponment was made, but counsel for the defendant went to trial, relying on the promise of the witness.  He did not arrive.  One ground of the motion for new trial was that he was prevented from being present, by reason of the illness of his wife, occurring shortly before the time when he would have started to attend court.  He lived in a different county from that where the trial occurred, and was not subpœnaed, but was willing to attend court and testify.  The defendant did not take the testimony of the witness.  The latter could not be required to attend court in a different county.  Counsel took the risk of his voluntary promise to do so.  The trial proceeded in his absence, without objection, and his failure to arrive furnishes no ground for a new trial.

6. None of the other grounds of the motion for a new trial furnish any sufficient reason for setting aside the verdict.

*Judgment affirmed.  All the Justices concur, except Fish, C. J., absent.*