(91 South. 747)

No. 24089.

**HUGHES, Sheriff, etc., v. CITY TRUST & SAVINGS CO. et al.**

(Oct. 14, 1921. Rehearing Granted April 22, 1922.)

*(Syllabus by the Court.,*

**1. Allegation as to statute under which assessment made not conclusive.**

Whether an assessment has been made in conformity to one statute or another is determinable ordinarily from the roll itself, rather than from the allegation of the tax collector's petition in a suit to recover the tax; and, the question being one of law, or mixed law and fact, the plaintiff will not be held bound by an allegation which the court finds to have been made in error.

**2. Assessment held against bank and not against shareholders.**

A tax roll bearing the general caption "Assessment Rolls of the Parish of Caddo, State of Louisiana, for the Year of 1916," with the subcaption "Name and Address of Taxpayer," beneath which appears the name "Red River Bank & Trust Company," followed by the subcaption "Description of Property," which, in turn, is followed by the names of the stockholders and their holdings and concluding with, "Capital stock, $150,000.00; surplus, $50,000.-00; undivided profits, $8,400.00; total, $208,-400.00, less 65%—total, $135,460.00," and by the certificate of the recorder that the foregoing is a correct copy of the assessment of the Red River Valley Bank & Trust Company as recorded, will be taken to show an assessment to the bank of its capital, surplus, and undivided profits, as required by Act No. 169 of 1916, rather than an assessment to the shareholders of the shares of stock held by them, as required by the pre-existing law.

**3. Liability of new bank upon reorganization.**

For a bank of this state to devest itself of all of its assets to the prejudice of its creditors, or any of them, and particularly of the state with respect to its taxes, is contrary to the policy, if not the text, of the law, and the consensus of the jurisprudence of this court and of the country is that a new corporation, in the organization of which the stockholders of an old corporation have participated and received stock in exchange for the assets and stock of the old corporation, becomes thereby responsible for the obligations and debts of such old corporation, whether matured or unmatured, listed or unlisted, at least to the extent of the value of such assets; and particularly is that true of a debt for taxes due or to become due.

**On Rehearing.**

*(Additional Syllabus by Editorial Staff.)*

**4. Taxation ⊚⟳365 — Assessments of bank stock to shareholders held annulled by amendatory act requiring assessment to bank.**

Under Act No. 169 of 1916, amending and re-enacting Act No. 170 of 1898, § 27, to provide for the assessment of the capital, surplus, and undivided profits of a bank against the bank, and requiring assessments for 1916 to be made thereunder, assessments against shareholders already made pursuant to the original act were annulled.

**5. Taxation ⊚⟳386(1) — Assessment of bank stock held assessment against shareholders, and not against bank.**

An assessment made in 1916 before the enactment or approval of Act No. 169 of 1916 was an assessment of shares of bank stock to each shareholder under Act No. 170 of 1898, § 27, and not an assessment of the capital, surplus, and undivided profits of the bank under the act of 1916, though it gave the bank's name as the name of the taxpayer, where it described the property as shares in such bank followed by the names of the shareholders, with the number of shares assessed to each, and at the end of the list stated the full amount of capital stock, surplus, and undivided profits, especially where the petition virtually admitted that the assessment was under the act of 1898.

**6. Taxation ⊚⟳522—Banks purchasing assets of old bank did not assume payment of taxes on stock.**

Where banks purchasing the assets of an existing bank assumed the obligations and liabilities specified in a list which did not refer to taxes assessed against shareholders, there was no conventional obligation on them to pay the taxes, and no legal obligation particularly in a summary proceeding under an assessment annulled by Act No. 169 of 1916 because made against the shareholders.

**7. Taxation ⊚⟳522—Statute requiring payment by liquidators inapplicable when taxes not due and subsequently annulled.**

Assuming that Act No. 170 of 1898, § 49, requiring liquidators in possession of personal property to pay taxes, refers to liquidators appointed in an extrajudicial proceeding, it was not applicable to liquidators of a bank, where

taxes assessed against shareholders were not due when the bank was in liquidation, and were subsequently annulled by Act No. 169 of 1916.

Dawkins, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Proceedings by Thomas R. Hughes, Sheriff and ex officio Tax Collector, against the City Trust & Savings Company and others. From a judgment for defendants, plaintiff appeals. Affirmed on rehearing.

E. W. & P. N. Browne, E. Wayles Browne, and Percy N. Browne, all of Shreveport, for appellant.

Blanchard, Goldstein & Walker, of Shreveport, for appellees.

By the WHOLE COURT.

Statement of the Case.

MONROE, C. J. This is a proceeding for the collection of state, parish, school, and other taxes for the year 1916 said to have been assessed to the Red River Valley Bank & Trust Company, and for which the City Trust & Savings Company and the City National Bank, both of Shreveport, are alleged to have made themselves liable in solido with the original tax debtor by reason of the following acts and circumstances, to wit:

The corporation first above mentioned was created in 1913, and was engaged in business in Shreveport until a certain date in June, 1916. Several months prior to that date some of the stockholders, with a few other persons, conceived the idea of establishing a national bank and a trust and savings bank as an ally under the state law, with the same stockholders and management, and, as the main feature of that movement, to absorb the Red River Valley Bank & Trust Company (hereafter called Red River Bank). Of the three persons who particularly interested themselves in furthering that idea, Mr. W. L. Young, a gentleman of experience in banking matters, took the more active part, and

was the only witness who testified in the case. His testimony reads in part as follows:

"Q. Was it not part of the program that, in making the change, you would go with the Red River Bank and assist that bank in liquidating its affairs, so that the new bank could take the business and assets and liabilities of the old bank? A. Well, when I went in there [as cashier] the plan of organization had not been thoroughly worked out. Q. Was it then in contemplation? A. Yes, sir. Q. And you were working along with others to that end? A. Yes, sir; the new bank was contemplated, and the organization was being perfected at that time. Q. Then you were working right along with the others in order to assist the old bank to be liquidated and the new bank to take over the business and go ahead? A. Well, I suppose so; the idea was to build a new organization and to use the old organization as a nucleus. Q. You were one of the gentlemen, to wit, J. B. Ardis, J. Homer Jordan, and yourself, to take up the matter of liquidating the old bank with the stockholders and taking over the business of the old bank from the stockholders by the new bank? A. I was one of the three trustees who had power of attorney from the stockholders of the Red River Bank. * * * Q. Mr. Young, what proposition was put to the stockholders of the Red River Bank & Trust Company in regard to the dissolution and to the taking over of the assets and liabilities by the new bank at the liquidation of the Red River Bank & Trust Company; also what inducements were offered to take out stock in the new bank? A. I think we have the letter here that was sent out. * * * (Counsel for plaintiff offers in evidence the letter.) Q. Mr. Young, yourself, J. Homer Jordan, and J. B. Ardis received all the proxies from the stockholders of the Red River Valley Bank & Trust Company, as trustees for those stockholders? * * * A. I think practically all of the proxies were given to us, but I think that a few were given to other persons. * * * Q. Mr. Young, in the letter dated February 25, 1916, sent out to the stockholders of the Red River Bank & Trust Company, appears the following statement: 'As stockholders of the Red River Bank & Trust Company, we beg to submit herewith, for your consideration and approval, a plan for the reorganization of its affairs, with a simultaneous establishment of a national bank and trust company, to take over the business, with an increase of capital and with valuable acquisitions to the personnel of the management. As you know, the Red River

Bank & Trust Company has $150,000.00 capital [and] $50,000.00 surplus, making a total capital and surplus of $200,000.00 paid in. It is proposed to raise $300,000.00 more from new stockholders, and to organize a national bank and trust company, to have a capital stock of $400,000.00, and the trust company to have $100,000.00. The two institutions are to belong to the same stockholders, have the same directors and to be operated under the same management. The national bank will be called the City National Bank, and the name of the trust company will be City Trust & Savings Company.' I will now ask you whether or not the organization set out in the letter I have just read was in fact, consummated? A. Practically so. * * * Q. You would say that the plan was substantially carried out as set out in that letter? A. Yes, sir."

The proxies and powers of attorney referred to were given by the holders of the entire $200,000 constituting the capital and surplus of the Red River Bank, with the exception of $13,705, and read in part as follows:

· "It is understood that the City National Bank of Shreveport is to be organized under the national banking laws, with a capital of $400,000.00, and the City Trust & Savings Company of Shreveport is to be organized agreeably to the laws of the state of Louisiana with a capital stock of $100,000.00. Both institutions are to be established simultaneously or as nearly so as practicable, and operated under the same management. The stock of the City Trust & Savings Company is to be the property of the stockholders of the City National Bank, and all of it, except what may be necessary for directors to own in order legally to qualify as such, is to be issued in the names of J. B. Ardis, J. H. Jordan and W. L. Young, trustees, to be held by them in trust for the benefit of the stockholders of the City National Bank of Shreveport.

"I hereby grant to my above-named agents and attorneys in fact full power and authority to act for me in my name, place, and stead as aforesaid," etc.

The words "practically" and "substantially," which appear in the foregoing testimony, are, no doubt, used because there was delay in completing the organization of the national bank, and, the organization of the City Trust & Savings Company having been first completed, the assets and liabilities of the Red River Bank were turned over to it and assumed by it, and parceled out between it and the National Bank upon the completion of the latter organization. The proceedings in the carrying through of the transaction were about as follows: The agents appointed by the stockholders of the Red River Bank, acting under the authority conferred on them, voted that institution into liquidation and appointed the City Trust & Savings Company liquidator; they then conveyed the entire assets of the bank to the liquidator, calling the conveyance a sale, for which they received the checks of the cashier of the savings company; and they then, or later, returned those checks and received instead stock in the two new banks for the amount of the stock of their principals in the Red River Bank which they surrendered with the assets of that bank; so that, the whole transaction, as originally contemplated and as carried through, was but the exchange of the stock, assets, and liabilities of the Red River Bank for an equal amount, par value, of the stock and corresponding interest in the assets of the two new banks.

The resolutions whereby the transfer was made and accepted read in part:

"* * * Be it resolved that the Red River Bank * * * does hereby sell, set over, and deliver the whole of its assets to the said City Trust & Savings Company for a sum of money equal to the liabilities of the Red River Valley Bank, * * * including its capital stock and other liabilities, as shown by statement of June 21, 1916, all of which liabilities are to be assumed and paid in full by the City Trust & Savings Company. * * *

"Resolved that the City Trust & Savings Company, represented by a quorum of its directors, does hereby accept and confirm the sale embodied in the above resolution adopted by the stockholders of the Red River Valley Bank & Trust Company, pursuant to all of its assumptions and obligations therein set forth."

The liquidation of the Red River Bank was completed on June 21, 1916. The organization of the City National Bank was com-

pleted on July 1. At that time the state and parish taxes for the year 1916 for which the Red River Bank was liable were not exigible, and hence they were not included in the statement of assets and liabilities taken over and assumed by the City Trust & Savings Bank. But some time later in the year the new banks were notified that they were looked to for their payment, and, the matter having been taken under consideration by the directors (who were the same for both institutions), they instructed the cashier (who was also the same, being W. L. Young) to draw a check for their payment, and he drew the check. Thereafter, however, the directors were advised that the banks were under no liability for the taxes, and the order to draw the check was rescinded, and the check canceled.

The certified excerpt from the assessment roll of the parish of Caddo for the year 1916 showing the assessment of the Red River Valley Bank & Trust Company appears in the record as follows:

"Assessment Rolls of the Parish of Caddo, State of Louisiana, for the Year 1916.

No.      Name and address of Taxpayer.
6873.      Red River Bank & Trust Company.

"Description of Property."

Then comes a list of the stockholders in the bank, with the number and value of the shares held by them, respectively, after which, the following:

"Capital stock, $150,000.00; surplus, $50,-000.00; undivided profits, $8,400.00; total, $208,400.00, less 65%—total, $135,460.00.

"I hereby certify that the above and foregoing is a true and correct copy of the assessment of the Red River Valley Bank & Trust Company, as shown by assessment rolls for the year 1916, of record in my office.

"Given under my hand and seal of office on this, the 4th day of June, 1919.
     "[Signed] W. M. Levy,
     "Dy. Clk. & Ex. off. Dy. Recorder."

And there follows a similar certificate by the assessor.

## Opinion.

I. The act of 1916 (No. 169, pp. 397, 398) requires the assessor to deduct the amount at which the real estate of a bank is assessed from its capital, surplus, and undivided profits, "and make an assessment for the current year upon the capital, surplus and undivided profits remaining after deducting the value of said real estate," and the last section reads:

"Sec. 2. * * * That all laws or parts of laws in conflict herewith be and the same are hereby repealed, and that the assessment for the year 1916 shall be made in accordance with this act."

Under the pre-existing law (Act 170 of 1898, § 27) the assessment of the capital stock of banks to the banks themselves was prohibited, and the taxation of that property was arrived at by assessing the shares to the shareholders and requiring the banks to pay the tax. The modus operandi by which assessments were made and completed and taxes became exigible was provided (so far at least as the question here at issue is concerned) by Acts 182 and 194 of 1906, 220 of 1910, and 171 of 1912, by the various provisions of which the taxpayer was required to make his returns prior to April 1; the assessor was required to complete his listing and valuations on or before May 1; the police juries, sitting as boards of reviewers, were required to meet on the first Monday in June, or as soon thereafter as possible, and were expected to complete their work prior to June 30, since the assessor was required, as soon as they had done so, and on or before June 30, to forward abstracts of the rolls to the auditor; and the state board of equalization was required to meet in the state capitol on the second Tuesday in July, examine the abstracts, and equalize the assessments, after which, and after notification by the auditor of the action so taken, the assessor was required to complete his rolls in triplicate, and deliver one copy to the tax collector and one to the auditor, and file the third copy in the office of the recorder of mortgages.

By Act 171 of 1912 it is provided that the tax on movable property shall be due as soon

as the rolls are filed in the mortgage office, and shall be paid on the 1st day of the calendar month next succeeding such filing, provided that no forced collection of taxes on movable property shall be made before the 1st day of October, unless the collector has good reason to believe that the state, parish, or municipal corporation will lose the same, and provided further that all taxes unpaid on the 31st day of December shall bear interest at the rate of 10 per cent. from that date. The grounds upon which defendants rely are thus stated in the brief of their counsel, to wit:

"The defense of this case is twofold, it being averred, * * * on the one hand, that the assessment which is the basis of the tax here sought to be collected is a nullity, and did not create any liability even on the part of the Red River Bank, and, on the other hand, that, even if the assessment were legal, and the tax claimed thereunder a valid obligation of the Red River Bank, neither the City Trust & Savings Company nor the City National Bank is liable therefor, for the reason that neither of them is the successor of the Red River Bank, nor has either acquired the assets of the Red River Bank by consolidations, merger, reorganization, or reincarnation; and the defendants have both alleged and proven that the purchase by the City Trust & Savings Company from the Red River Bank of the latter's assets was a purchase in good faith for a more than adequate consideration, which consideration was paid in cash to the Red River Bank."

[2] The contention in support of the ground of defense first alleged (i. e., that the assessment was null even as to the Red River Bank) is that it is an assessment of the shares to the shareholders, as provided by Act 170 of 1898, and not an assessment of the capital, surplus, etc., to the bank, as required by Act 169 of 1916.

The assessment, however, speaks for itself. The general caption shows that the instrument upon which it appears is the "Assessment Rolls of the Parish of Caddo, State of Louisiana, for the Year 1916," and it is to be presumed that the assessment was intended to conform to the statute which required that

151 LA.—11

the assessment of banking capital, surplus, and undivided profits for the year 1916 should be made to the bank or banking association owning such assets; and it does conform to that statute, since beneath the subcaption "Name and Address of the Taxpayer" we find "Red River Bank & Trust Company," and under the heading "Description of Property," and following the names of the shareholders and the statement of their holdings, we find the property taxed described as: "Capital stock, $150,000.00; surplus, $50,000.-00; undivided profits, $8,400.00; total $200,-000.00, less 65%; total, $135,460.00"—whereas section 27 of Act 170 of 1898 contains no provision for the assessments of either surplus or undivided profits, and declares in terms:

"That no assessment shall hereafter be made under that name, as the capital stock of any national bank, state bank, banking company, banking firms or banking associations, whose capital stock is represented by shares, but the shares shall be assessed, at their actual value as shown by the books of the bank, or banks, to the shareholders, who appear as such upon the books," etc.

Apart from the presumption that the assessor intended that which he was commanded to do, rather than that which he was prohibited from doing, and that the assessment, as made, describes the bank as the taxpayer, and the capital stock, surplus, and undivided profits, of which the shares are constituent elements, as the property taxed, there is a presumption, founded in reason and common observation, which tends strongly to support the view that the assessment in question was made with due regard to the requirements of the act of 1916. That statute was approved on July 6, 1916, and must have been in process of gestation for some time prior to that, and it is in the highest degree improbable that the assessors throughout the state should have been ignorant of the fact, and should have failed to keep themselves informed of the progress made and on the alert with respect to the duty which it might

impose upon them in so important a matter as the assessment of banking capital. Whether the assessment was made in anticipation of or after the passage of the act the evidence does not enable us to say, but, as it could not have reached the board of equalization before the second Tuesday in July, 1916, and may not have been acted on by that board for some time subsequent to that date, and had then to be returned to the assessor, completed by him, and filed in triplicate in the several offices mentioned, it seems more than probable, particularly when we consider that, as completed, it conforms to that statute, that it was made so to conform after the passage of the act of 1916 and upon its return from the board of equalization. The law declares and the jurisdiction is settled to the effect that, if an assessment be of such a character as to identify the property, it is sufficient, and we are of opinion that in this instance the assessment does identify the property as the capital, surplus, and undivided profits of the Red River Valley Bank & Trust Company, and that the reference to the shares may be regarded either as a further description of such capital stock, surplus, etc., or as a mere surplusage.

[1] Defendants' counsel quote certain allegations of plaintiff's petition as meaning that the assessment here in question was made under and conforms to Act 170 of 1898, rather than Act 169 of 1916, and that, as judicial admissions they are conclusive of that question. We have given our reasons for the conclusion that the assessment as made conforms to the requirements of the act of 1916, and it appears to us that that conclusion cannot be controlled by possible errors of law into which plaintiff's counsel may have fallen as to the statute which the assessor had in mind in making it. In other words, if the assessment conforms to the requirements of the statute prescribing the manner in which the capital, surplus, and undivided profits of banks were to be assess-

ed for the year 1916, its legality cannot be affected by an erroneous allegation that it was made under and in conformity to, some other statute. There is, however, no specific allegation in plaintiff's petition to the effect that the assessment was made under, or that it conforms to, the requirements of the act of 1898. That meaning is deduced by defendant's counsel and by our learned Brother, and not unreasonably, from the language of the allegations, but the question of law and fact whether the assessment meets the requirements of the act of 1916 is, after all, to be determined by the assessment itself, and, since we find it to be an assessment to the bank of its capital stock, surplus, and undivided profits, which is required by the act of 1916, and is prohibited by the act of 1898, we feel bound to hold it a valid assessment.

It is proper to state that defendants filed an exception of no cause of action, which was overruled by Judge Webb, to whom the case appears to have been first assigned, and that thereafter defaults were entered against all the defendants, which were set aside upon the filing of answers (save in the case of the Red River Bank); that the case was then heard by Judge Webb on the merits, and that he gave judgment for plaintiff; that, pending an application for new trial, Judge Webb resigned, and the case fell to Judge Land, who granted the new trial, and apparently was not called on to consider the exception apart from the merits. On the merits the assessment roll was offered and received in evidence without objection, and, in our view, controls the allegations of the petition in the same sense and to the same extent as does any document which, being described in, is annexed to and made part of, a petition for greater certainty, and our brother Judge Land seems so to have thought, since, in the end, he predicates his judgment upon the assessment itself, holding it to be an assessment of the shares of the

stock in the hands of the shareholders as provided by the act of 1898—a view in which, for the reasons stated, we are unable to concur.

[3] II. The other point presented in the the case is:

That, even if the "assessment were legal, and the tax claimed thereunder a valid obligation of the Red River Bank, neither the City Trust & Savings Company nor the City National Bank are liable therefor, for the reason that neither of them is the successor of the Red River Bank, nor has acquired the assets of that bank by consolidation, merger, reorganization, or reincarnation, and that defendants have both alleged and proven that the purchase by the City Trust & Savings Company from the Red River Bank of the latter's assets was a purchase in good faith for a more than adequate consideration, which consideration was paid to the bank in cash."

No one is here questioning the good faith of the transaction as the result of which the assets, including the good will of the business, of the Red River Bank were conveyed to, and taken over by, the defendant banks, and the Red River Bank, if still existent, left a mere shell, with no assets and no officers to represent it. But, for the purposes of the case, that transaction must be considered as an incident of, and in its relation to, the whole transaction; and, so considering, we find that the whole purpose, as effectuated, was that the owners of 7 per cent. of the stock of the Red River Bank were paid for and withdrew in cash their interests, amounting to $13,705, and that the owners of the remaining 93 per cent. of the stock moved out and carried with them the remaining assets and good will of the business of the bank, amounting in cash and cash assets to $186,229.95, into the two new banks organized by them in association with other persons who contributed additional capital for that purpose, and that, in consideration of the assets, etc., so taken over, they (the stockholders of the old bank), with their new associate stockholders of the new banks,

caused the stock of those banks to be issued to themselves (or to trustees representing them) to an amount equivalent in value to those assets, and the new banks assumed the liabilities of the old. It is true that in the resolutions transferring and accepting the transfer of the assets reference is made to a certain statement of June 21, 1916, as containing a list of the assets and liabilities so transferred, and that the obligation of the Red River Bank with respect to the taxes for 1916 here claimed does not appear therein; but the evidence satisfies us that its omission was an oversight, and that view is confirmed by the facts that the directors of the new banks, acting at that time, recognized the obligation and instructed the cashier (Mr. Young), who had conducted all the negotiations, to reserve the money required for its discharge, and that he drew his "cashier's" check wherewith to make the payment, and that it was only at a later period, and upon the advice of counsel as to the validity of the assessment, and perhaps as to the liability of the new banks, even though the assessments were valid, that the check was canceled, and denial of the obligation determined upon.

The Constitution declares that all property shall be taxed save such as may be expressly exempted by law, and the property here in question is not so exempted, but is specifically taxed. The statute law (Act 170 of 1898, § 1, p. 346) declares that—

"For the calendar year A. D. 1898 and for each succeeding calendar year, there are hereby levied annual taxes, amounting in the aggregate to six mills on the dollar of the assessed valuation of all property situated within the state of Louisiana, except such as is expressly exempted from taxation by law," etc. (the rate having been changed, but the provision remaining unchanged in other respects).

The obligation thus imposed by the levy of the tax for each calendar year is recognized in every act of sale of real estate that

is passed, the taxes for the current year, if not at the time exigible, being assumed by the one party or the other, or by both; and the proposition that the stockholders of a bank can at any time, by conveying all of its property to another bank created by them (and others who know that the taxes have not been paid), release it from that obligation, is untenable. Act 193 of 1910, § 3, declares that one bank may sell its assets to another, but that "such agreement shall contain provisions for the payment of liabilities of the selling bank." Act 170 of 1898, § 49, p. 370, declares that—

"Whenever, any sheriff, constable, marshal, receiver, liquidator syndic or other judicial or court officer or functionary shall take possession of personal property it shall be his duty to pay at once all the taxes that may be due or become due upon the same, and if he fails to do so he shall become responsible personally and upon his bond for the payment of the same."

If, then, the transaction here in question be regarded as a sale, defendants should be held liable for the obligation of the selling bank with respect to its taxes; and, if it be not regarded as a sale, and the liquidating bank be not regarded as a liquidator, within the meaning of the act of 1898, the statutes above quoted at least indicate the policy of the law to be that a corporation shall not devest itself of its property to the prejudice of its creditors, and that those who are put in possession of the property of others shall at once pay such taxes as may be due or become due thereon. Beyond that the consensus of the jurisprudence of the country, as we find, sustains the doctrine that a new corporation, in the organization of which 93 per cent. of the stockholders of an old corporation participate, and receive stock in exchange for the assets and stock of the old corporation, becomes thereby responsible for the debts of such old corporation, whether matured or unmatured, listed or unlisted, at least to the extent of the value of such assets so acquired by it; and particularly is that true of taxes due and to become due. Atlantic & Birmingham Ry. Co. v. Johnson, 127 Ga. 392, 56 S. E. 482, 11 L. R. A. (N. S.) 1119, and case note, pp. 1119–1133; 10 Cyc. 286; W. F. Taylor Co. v. Gulf, etc., Co., 119 La. 426, 44 South. 187; Wolff v. Shreveport, etc., Co., 138 La. 759, 70 South. 789, L. R. A. 1916D, 1138; Brum et al. v. Merchants' Mut. Ins. Co. (C. C.) 16 Fed. 140; Altoona v. Richardson Gas & Oil Co., 81 Kan. 717, 106 Pac. 1025, 26 L. R. A. (N. S.) 652; Grenell v. Detroit Gas Co., 112 Mich. 70, 70 N. W. 413; Wesco Supply Co. v. Eldorado Light & Water Co., 107 Ark. 424, 155 S. W. 518; Jennings, Neff & Co. v. Crystal Ice Co., 128 Tenn. 231, 159 S. W. 1088, 47 L. R. A. (N. S.) 1058; Harbison-Walker Refractories Co. v. McFarland's Adm'r, 156 Ky. 44, 160 S. W. 798; Hibernia Ins. Co. v. St. L. & N. O. T. Co. (C. C.) 13 Fed. 516; Kansas, C. S. R. Co. v. Guardian T. Co., 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579; Northern R. R. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931; Fletcher on Corporations, vol. 7, § 4755.

For the reasons thus assigned, it is ordered that the judgment appealed from be annulled, and that there now be judgment in favor of plaintiff and against the City National Bank and the City Trust & Savings Company, herein made defendants in solido in the sum of $2,912.37, with interest thereon at the rate of 10 per cent. per annum from January 1, 1917, until paid, together with an additional 10 per cent. upon the aggregate of said principal amount and interest; and it is further ordered and decreed that said defendants in solido pay all costs of this suit.

OVERTON and LAND, JJ., not having been members of the court when this case was submitted, take no part in the decision.

On Rehearing.

By the WHOLE COURT.

O'NIELL, J. The tax collector has appealed from a judgment rejecting his demand in a summary proceeding by rule to collect the state and parish taxes for the year 1915, which were assessed against the shares of stock of a defunct bank, the Red River Valley Bank & Trust Company. The bank went out of business in June, 1916, being succeeded by the City Trust & Savings Company and the City National Bank, as purchasers of the assets of the old bank, before the taxes for 1916 were due or collectible. The suit was brought against the three banks in solido. There was no defense made by or on behalf of the defunct bank, nor attempt to take judgment against it. The defense made by the two new banks and sustained by the judgment appealed from was that the tax collector had no cause or right of action, because the assessment was null, having been made pursuant to the provisions of section 27 of Act 170 of 1898, p. 362, which section was superseded by Act 169 of 1916, p. 397, declaring that all laws or parts of laws in conflict therewith were thereby repealed, and that the assessments for that year should be made in conformity with the provisions of the latter statute.

[4] Section 27 of Act 170 of 1898 forbade an assessment of the capital stock of any bank or banking company, firm, or association in the name of the bank or banking company, firm, or association, and required that the shares of stock should be assessed at their book value to the shareholders whose names appeared as such on the books of the bank. Act 169 of 1916, on the contrary, made it the duty of the tax assessors —and in terms made it their duty in making assessments for that year—to assess to each bank, banking corporation, association, or firm, the capital, surplus, and undivided profits thereof, as shown by a sworn statement to be furnished by the officers of the bank, deducting the value of the bank's real estate, which should be assessed separately. The statute of 1916 was an amendment and reenactment of section 27 of the statute of 1898; and in the concluding paragraph of the new statute all assessments that were already made for that year, pursuant to the provisions of section 27 of the statute of 1898, were annulled by the repeal of the law, and by the declaration that the assessments for that year should be made in accord with the provisions of the statute of that year.

[5] We were mistaken in saying, in our original opinion in this case, that the assessment on which this suit was founded was an assessment of the capital, surplus, and undivided profits of the Red River Valley Bank & Trust Company to or in the name of the corporation itself. We were mistaken also in assuming that the assessment might have been made with reference to the statute of 1916. The assessment was made before that statute was enacted; and it purported to be, and in fact was, not an assessment of the capital, surplus, and undivided profits assessed to or in the name of the bank, but an assessment of the shares of stock to and in the names of the shareholders, as was required by the statute of 1898, and as forbidden by the statute of 1916. It was alleged in plaintiff's petition, and admitted in defendants' answer, that the assessment was made before June, 1916. It was further alleged and admitted:

"And, in accordance with, and acting by virtue of, the revenue laws of this state, the assessor of said parish, S. Q. Hollingsworth, listed and assessed to the said bank and its stockholders, at the book value thereof, as provided by law, all of the certificates of the capital stock of said bank then outstanding, as furnished by the officers thereof, said assessment, as shown by the tax rolls for the year 1916, filed in the office of the recorder of mortgages and in the sheriff's office of said parish on September 21, 1916, being as follows, to wit: 'Shares of Red River Bank & Trust Company,

as follows: G. A. Adams, 50 shares; R. A. Allison, 75; F. R. Allston, 10,'" etc. (The list contains 121 names, with the number of shares listed and assessed to each shareholder.)

At the end of the list, and in the same paragraph, is the statement showing the value of the shares of stock, viz:

"Capital stock, $150,000; surplus, $50,000; undivided profits, $8,400; total $208,400, less 65%—total, $135,460."

It is true in the assessment list itself, under the caption "Name and Address of Taxpayer," appears the name "Red River Bank & Trust Company." But under the caption "Description of Property," appears "Shares of Red River Bank & Trust Company as follows," and then follows the stock list, containing 121 names of shareholders, with the number of shares assessed to each shareholder. The naming of the corporation the shares of whose capital stock were assessed does not indicate that the assessor intended to assess the shares of stock to the corporation, in violation of the statute then in force. The obvious reason for giving the name of the corporation the shares of whose stock were assessed was that the statute of 1898 made it the duty of the officers of the bank to pay the taxes assessed to each shareholder and charge the amount to him. And the obvious reason for stating the financial condition of the bank at the end of the list of shareholders whose shares were assessed was to fix the value at which the shares belonging to each shareholder were assessed.

The statute of 1916 was not enacted or approved until the 6th of July, 1916. The allegation in plaintiff's petition that the assessment was made a month before that date precludes the idea that the assessor then intended that the assessment should conform with the requirements of the statute of 1916. That statute was not mentioned or referred to at all in plaintiff's original petition, in the fourteenth paragraph of which it was virtually admitted again that the assessment was made pursuant to the provisions of the statute of 1898, viz:

"Shows that, although the said Act 170 of 1898 provides for the listing of the certificates of stock in the name of the stockholders, the bank is made the principal tax debtor and primarily owes the amount of all taxes assessed against the bank and its stockholders. That the law makes it the duty of said bank to pay said taxes, charging the amount thereof, pro rata, to its several stockholders."

Plaintiff filed a supplemental petition proposing to amend the allegations of the third and fourteenth paragraphs of his original petition. The amendment was allowed as to the third paragraph (which is not pertinent to the question before us), but was not allowed as to the fourteenth paragraph. The proposed amendment did not purport to be an averment that the assessment had been made pursuant to, or in accord with, the statute of 1916, but was merely an interpretation of the statute, viz:

"Shows that, both under section 23 of Act 170 of 1898, prior to its amendment and the amendment thereto, of 1916, being Act 169 of the General Assembly of that year, the bank is made the tax debtor and owes all taxes assessed either against it or its stockholders, it being the duty of said bank, under said law, to pay said taxes, charging the amount thereof to its several stockholders."

The offering of the assessment rolls in evidence merely confirmed plaintiff's allegation that the assessment had been made pursuant to and in conformity with the statute of 1898.

[6, 7] The list of obligations and liabilities assumed by the purchasing banks did not refer to the taxes in contest. There is therefore no conventional obligation on the part of these banks to pay the taxes in contest. There is no legal obligation, particularly in a summary proceeding under an assessment that has been annulled by statute. Assuming that section 49 of Act 170 of 1898 has

reference to liquidators appointed in an extrajudicial proceeding—which is not at all certain—it is not applicable to this case, because the taxes assessed to the shareholders of the Red River Bank & Trust Company were not due when the bank was in liquidation, and the subsequent annulment of the assessment by the statute of 1916 prevented their ever becoming due under that assessment.

The judgment appealed from is affirmed.

DAWKINS, J., dissents.
LAND, J., recused.