70522. TURRENTINE v. THE STATE.
(335 SE2d 630)

BENHAM, Judge.

Appellant was convicted of driving under the influence of alcohol and now appeals, taking issue with the admission of certain testimony and the contents of a portion of the charge to the jury.

1. An Athens police officer assigned to the local DUI Task Force stopped appellant's car after he observed it weaving and noticed the bloodshot eyes of the driver, appellant. After hearing appellant's slurred speech, the officer conducted two field sobriety tests, the "toe-to-heel" walking test and the "alco-sensor" breath test. Upon observing the results of those tests, the officer informed appellant of her rights under the implied consent statute (OCGA § 40-5-55) and OCGA § 40-6-392 (3), and escorted her to the police station where she underwent an intoximeter breathalyzer test which showed a blood alcohol content of .17 percent.

At trial the permit of the operator of the intoximeter breathalyzer was admitted into evidence, as were certified copies of two letters issued by the Director of the GBI's Division of Forensic Sciences (DFS). In one letter, the director approved the use of the intoximeter breathalyzer employed in this case; in the other letter, the director approved the use of the alco-sensor used in this case as a breath-alcohol screening device.

Appellant unsuccessfully sought to strike all evidence concerning the results of the alco-sensor and intoximeter tests on the ground that a proper foundation had not been laid for their admission. Specifically, appellant maintained that the officer failed to precede the administration of the alco-sensor test with implied consent warnings

and that there was no evidence the officer who administered the alco-sensor test had a valid permit to do so.

Appellant's position is premised on the application of OCGA § 40-6-392 to the alco-sensor test. That statute sets forth requirements which must be met before "evidence of the *amount* of alcohol or drug in a person's blood . . . as determined by a chemical analysis of the person's . . . breath . . . shall be admissible." (Emphasis supplied.) For the reasons which follow, we hold that the admissibility of an alco-sensor test result is not governed by OCGA § 40-6-392.

First and foremost, alco-sensor results are not used as "evidence of the amount of alcohol or drug in a person's blood." Compare OCGA § 40-6-392 (a). Instead, the alco-sensor is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol. See *Channell v. State*, 172 Ga. App. 156 (322 SE2d 356) (1984); *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984). While there is no statutory scheme covering initial screening tests, the Department of Public Safety has promulgated rules and regulations which mandate that any initial alcohol screening test given "shall be a breath test and will utilize a device of a design approved by the Direc-tor of the State Crime Laboratory." Rule 570-9-.06 (3), Rules and Regulations of the Department of Public Safety. The regulations dis-tinguish between an "initial alcohol screening test," and a blood or breath test which is administered "to determine the alcohol concen-tration by weight in the blood . . ." Rule 570-9-.06 (4-6). It is to the latter of these tests that OCGA § 40-6-392 is applicable, for tests which "determine the alcohol concentration by weight in the blood" (Rule 570-9-.06 (4)) result in "evidence of the amount of alcohol . . . in a person's blood . . ." OCGA § 40-6-392 (a). Thus, in order to have admitted into evidence the amount of alcohol in appellant's blood as determined by an intoximeter breathalyzer analysis, the State had to show that the method of testing had been approved by the DFS, that the machine operator had a valid DFS permit, and that appellant had been informed of her rights under the implied consent statute. OCGA § 40-6-392 (a) (1), (4). See also *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983). Our review of the record reveals that the State car-ried its burden in this regard, thereby permitting the inclusion into evidence of the result of the intoximeter breathalyzer test. Insofar as the initial alcohol screening test is concerned, it need only be shown that the device is of a design approved by the DFS, and the State adequately carried its burden on this matter. Therefore, it was not error to permit the officer to testify that appellant had failed the ini-tial alcohol screening test. Furthermore, since appellant was not under arrest when the screening test was administered and we have held that OCGA § 40-6-392 is inapplicable to the initial alcohol

screening test, there was no requirement that administration of the screening test be preceded by advising the motorist of her right to an independent test. See OCGA § 40-6-392 (a) (4).

Appellant argues that this court's decision in *Channell v. State*, supra, makes OCGA § 40-6-392 applicable to initial screenings. We disagree. Channell's conviction was reversed because the State failed to prove compliance with the Department of Public Safety regulations regarding the admission of the testimony of the arresting officer that Channell had failed to pass the alco-sensor screening test. More specifically, the State failed to show that the device used was of a design approved by the DFS. Because the required foundation for the officer's testimony was not laid, it was held to be reversible error to admit the testimony. *Channell v. State*, supra, at 157. The court's reference to OCGA § 40-6-392 (a) (1) was dicta and should not be construed as holding that the statute's requirements apply to initial screening tests done to establish probable cause to arrest.

2. Appellant contends that the trial court's charge to the jury on the effect of a finding of a blood alcohol reading of .12 or more created a constitutionally impermissible presumption of guilt. Appellant's argument was answered adversely to appellant by the Supreme Court in *Lester v. State*, 253 Ga. 235 (2) (320 SE2d 142) (1984).

Citing *Sweat v. State*, 173 Ga. App. 441 (326 SE2d 809) (1985), appellant also claims the trial court's charge on this subject (OCGA § 40-6-392 (b) (4)) contained an intimation of the trial court's opinion of the guilt of appellant. In its explanation of the presumptions codified in OCGA § 40-6-392 (b), the trial court informed the jury "if there was, however, 0.12 percent gram weight of alcohol in the person's blood . . . then that in itself is no longer a presumption, but is what we call a fact — a per se fact. That is, in and of itself, it is correct and not rebuttable. It is a *de jure*, that is by law, a *de facto*, in fact, presumption — not presumption, but a fact that the person was too much under the influence of alcohol to be allowed to drive an automobile or other moving vehicle on the highway or elsewhere in Georgia . . . [T]he jury has no authority to reject that and must accept it as a fact that the person was under the influence of alcohol." Contrary to appellant's assertion, the charge did not embody the trial court's opinion as to the guilt or innocence of the accused. See OCGA § 17-8-57. Compare *Sweat v. State*, supra. Rather, the OCGA § 40-6-392 (b) portion of the charge was a statement that if the jury found appellant's blood alcohol count to be .12 percent or higher, it must find she was under the influence of alcohol. See *Lester v. State*, supra at 237. However, the establishment of that fact is not conclusive evidence of driving under the influence. See *Lester*, at 238, fn. 6. The State must still prove that appellant was in physical control of a moving vehicle and that applicable rules and regulations were followed in

gathering evidence. The trial court's charge was a valid statement of the law and not an expression of opinion regarding appellant's guilt or innocence.

*Judgment affirmed. Banke, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 6, 1985 —
REHEARING DISMISSED SEPTEMBER 24, 1985 —

*Robert E. Surrency*, for appellant.
*Ken Stula, Solicitor*, for appellee.