## A90A0080. MENDOZA v. THE STATE.
### (396 SE2d 576)

POPE, Judge.

Defendant appeals his conviction of driving under the combined influence of alcohol and drugs, OCGA § 40-6-391 (a) (3). Defendant was charged with three counts of DUI. Count 1 charged DUI/alcohol pursuant to OCGA § 40-6-391 (a) (1). Count 2 charged DUI/drugs pursuant to OCGA § 40-6-391 (a) (2). Count 3 charged DUI/combined alcohol and drugs. Defendant was acquitted of Count 2, driving under the influence of drugs, OCGA § 40-6-391 (a) (2). The court directed a verdict of "not guilty" as to Count 1, driving under the influence of alcohol, OCGA § 40-6-391 (a) (1), which the jury returned. Although

the dissent finds the result incongruous, the record positively reflects evidence to support the conviction as set out in Division 1. Had the trial court chosen to do so, it could have submitted Count 1, the DUI/ alcohol (alone) charge to the jury. However, the fact that it did not, does not affect the validity of the conviction. See *Vann v. State*, 153 Ga. App. 710 (2) (266 SE2d 349) (1980).

1. Defendant argues that the trial court should not have permitted a State's witness, a police officer, to testify that defendant was under the influence of drugs because there was an insufficient foundation laid for the officer's opinion. Specifically, defendant objected to allowing the officer to testify about his use of two field sobriety tests, the "horizontal gaze nystagmus" (HGN) test and the "hippus" test. In the HGN test the officer has the suspect follow an object with his eyes. A jerking movement indicates drug use. In the hippus test, the officer shines a light in the suspect's eyes and observes the contraction or fixation of the pupils to indicate drug use. Because the officer could not give the scientific basis for each of these tests, including evidence of the scientific validity and reliability of the tests, defendant argues that evidence of these tests should have been excluded and the officer should not have been allowed to give his opinion that defendant was under the influence of drugs. However, upon the record before us, we need not reach the issue of the scientific validity of these tests.

The record shows that Mendoza was acquitted of Count 2, driving under the influence of drugs, but was convicted of Count 3, driving under the influence of alcohol and drugs. Even excluding evidence of the tests, there was sufficient other evidence to support a conviction for driving under the influence of alcohol. See Division 2, infra. The arresting officer testified that he observed Mendoza driving on the wrong side of the road. When he stopped Mendoza and questioned him outside his car, Mendoza was unsteady on his feet, showed glassy and bloodshot eyes and tested positive for alcohol on the alcosensor; Mendoza also refused to submit to a chemical test of his blood. This is sufficient to support Mendoza's conviction. That the evidence showed use only of alcohol and not of drugs does not create a fatal variance between the accusation and the proof. *Vann v. State*, supra.

In addition, the record shows that the trial court twice *sustained* Mendoza's objections to evidence of the officer's interpretation of the two tests question. The trial court did allow the officer to state that it was his opinion, based upon the totality of the circumstances, that Mendoza was under the influence of drugs. Thus, upon this record, there is no issue for review regarding the tests because the court sustained objections to them. There is no reversible error in the trial court's decision to allow the officer's opinions regarding drug use be-

cause the jury acquitted Mendoza of the count based solely on drug use.

2. Defendant argues that he was entitled to a directed verdict of acquittal because the scientific reliability of the field tests performed by the officer was not established, so there was no basis for the arresting officer's opinion that defendant was under the influence of drugs. Because no forensic evidence of defendant's use of either alcohol or drugs existed (due to defendant's refusal to submit to either blood or urine tests for determining alcohol or drug use), defendant argues that there is no competent evidence to show drug use beyond a reasonable doubt.

The court in *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801) (1988), held: "This refusal [to submit to a test] itself may be considered as positive evidence creating an inference that the test would show the presence of the prohibited substance. OCGA § 40-6-392 (c); *Wessels v. State*, 169 Ga. App. 246 (312 SE2d 361) (1983)." In addition, the officer's conclusion that defendant was under the influence of drugs was based upon more than the two specific tests to which defendant objected.

Construed in favor of the verdict, the evidence was such that a rational trier of fact could have found proof of defendant's guilt beyond a reasonable doubt. *Merrell v. State*, 192 Ga. App. 100, 101 (1) (383 SE2d 905) (1989).

3. Defendant assigns error in the exclusion of the specific quantitative result of his alco-sensor test, which was .03 grams percent of alcohol. The officer did testify that the test showed "positive for alcohol."

This court has recognized that an alco-sensor test is not evidence of the amount of alcohol in a person's blood, but is rather a screening device to determine whether there is probable cause that a defendant is driving under the influence of alcohol. *Sturdy v. State*, 192 Ga. App. 71, 72 (383 SE2d 632) (1989); *Whiteley v. State*, 188 Ga. App. 129 (1) (372 SE2d 296) (1988); *Turrentine v. State*, 176 Ga. App. 145, 146 (1) (335 SE2d 630) (1985). Although *Ronskowsky v. State*, 190 Ga. App. 147, 148 (2) (378 SE2d 185) (1989), affirmed the admission of the results of an alco-sensor test where the State introduced a document certifying the device had been approved by the GBI's Division of Forensic Sciences, this does not mean its measurement of the *amount* of alcohol percentage was permitted. *Ronskowsky* was based on *Turrentine*, supra, which distinguished between the alco-sensor results, which are used to alert the officer to the presence of alcohol, and the intoximeter test, which is used to gauge the *amount* of alcohol. The officer in this case was permitted to testify that the test showed the presence of alcohol. The exclusion of the quantitative result of the alco-sensor test was not reversible error.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Birdsong and Cooper, JJ., concur. Deen, P. J., concurs specially. Carley, C. J., Sognier and Beasley, JJ., dissent.*

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion, I would further allow as admissible the officer's opinion based on the "hippus" test and the "nystagmus" (HGN) test. The former is an observation of the reaction of one's pupils repeatedly dilating and contracting while a light is shone in one's eyes, indicating that one has consumed drugs; while the latter is an observation of a jerking movement of one's eyes as a possible result of drug usage. If in doubt, evidence should be admitted for evaluation by the jury. While experts could debate the scientific validity and value of interpretations of personal observations, this does not appear to be the type of procedure, technique, or official test requiring ascertainment by the trial judge of a scientific stage of verifiable certainty. See *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982).

"The gaze nystagmus test, as do other commonly used field sobriety tests, requires only the personal observation of the officer administering it. It is objective in nature and *does not* require expert interpretation." (Emphasis supplied.) *State v. Nagel*, 506 NE2d 285, 286 (Ohio App. 1986). We held in *Lawrence v. State*, 157 Ga. App. 264 (277 SE2d 60) (1981), that "[a] witness who satisfactorily shows that he had an opportunity to observe, and did observe, the condition of another may testify whether that person was under the influence of intoxicants and the extent thereof, stating the facts upon which the opinion is based." Personal observations and interpretations of "HGN" and "hippus" evidence are proper as to the issue of intoxication but not as to precise blood alcohol content. These observations are admissible for qualitative but not quantitative purposes. Any lay person as a witness may give an opinion as to intoxication. *Lawrence*, supra. See *Howard v. State*, 744 SW2d 640 (Tex. App. 1987). I would affirm the conviction of driving under the combined influence of alcohol and drugs. OCGA § 40-6-391 (a) (3).

BEASLEY, Judge, dissenting.

1. The court holds that the evidence was sufficient "to support a conviction for driving under the influence of alcohol." But the trial court had directed a verdict of "not guilty" as to driving under the influence of alcohol, and the jury returned such a verdict. Therefore, it could not also find defendant guilty of driving under the *combined* influence of alcohol and drugs, OCGA § 40-6-391 (a) (3), by finding beyond a reasonable doubt that defendant was guilty of driving under the influence of alcohol.

2. The conviction of driving under the *combined* influence requires consideration of the issue of the foundational proof of the scientific validity of the tests depended on by the officer in giving his opinions.

When the police officer testified, defendant objected to the admission of the field evaluations as a basis for his opinion and was overruled. No evidence was submitted to show that the officer's observations of defendant's eye reactions were valid indications of drug usage. This conclusion of the officer was, according to the record, based only on the officer's having learned these techniques from what he stated was a state-certified DUI detection and apprehension school and police-sponsored classes.

He simply testified that the jerking of the eye would indicate "[s]omeone being under the influence of either alcohol or drugs." He testified that the dilation of the pupil indicated "possible drug usage" and that the repeated dilation and contraction "indicates drug usage."

The officer was not able to cite scientific authority for the use or reliability of these tests. In *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982), the Supreme Court determined "that it is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure 'rests upon the laws of nature.' The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. . . . The significant point is that the trial court makes this determination based on the evidence available to him rather than by simply calculating the consensus in the scientific community. Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." This was recently applied in *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990).

The method must have reached a "scientific stage of verifiable certainty." *Walraven v. State*, 255 Ga. 276, 280 (5) (336 SE2d 798) (1985). Evidence, or exhibits, or treatises, or the rationale of cases in other jurisdictions was never presented to the court charged with making a determination. *Williams v. State*, 251 Ga. 749 (1) (312 SE2d 40) (1983); *Bostic v. State*, 173 Ga. App. 494, 495 (2) (326 SE2d 849) (1985). In response to the motion for new trial, the State conceded this to be true. On the other hand, this court has the benefit of cases from other jurisdictions belatedly cited to us by the State. Nevertheless, even if we were authorized to originally appraise the validity of

the tests, which we are not, the cases are at best inconclusive as to a general recognition of the scientific verification of the tests.

The officer was taught how to administer the "hippus" and "HGN" tests and what conclusions he could draw from the results but he gave no basis to establish that they were valid measurements of the influence of drugs on the person's behavior. This was assumed. The scientific validity of the tests remained unverified, so the trial court should not have allowed the officer's opinion insofar as he relied upon the tests. Expert testimony or other evidence "must enable the court to determine the reliability of [the test] generally from a scientific basis, as well as specifically under the circumstances of the statement "in [the] case." *Godfrey v. State*, 258 Ga. 28, 29 (365 SE2d 93) (1988); *Walraven*, supra. See Agnor's Georgia Evidence, § 10-8; Daniel's Handbook on Criminal Evidence, § 1-49. Absent the tainted tests, the evidence was not overwhelming as to defendant's guilt and it was not highly probable that the error did not contribute to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Compare *Ross v. State*, 192 Ga. App. 850 (1) (386 SE2d 721) (1989).

The judgment should be reversed, as defendant is entitled to a new trial.

I am authorized to state that Chief Judge Carley and Judge Sognier join in this dissent.

DECIDED JULY 16, 1990 —
REHEARING DENIED JULY 31, 1990.

*Davis, Sissel & Williams, Warren P. Davis*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, N. Jackson Cotney, Jr., Cliff Howard, Assistant Solicitors*, for appellee.