A96A1468. GRAY v. THE STATE.
(476 SE2d 12)

ELDRIDGE, Judge.

At the trial the evidence showed that at approximately 11:20 p.m. on May 19, 1994, appellant, while driving a Porsche north on Riverside Drive in north Fulton County, missed an almost 90-degree curve to the right, crossed both lanes of traffic, hit the guardrail head on, passed under the rail, and plunged some 110 feet down

an embankment into some woods. The Porsche left approximately 60 feet of parallel straight skid marks, which indicated that the car slid past the curve without any turning and straight into the guard-rail at a right angle.

Appellant ended up in the front yard of Mr. and Mrs. D. B. Plymale. When they heard the crash, they immediately called 911 because, from long experience, they knew someone had wrecked on the severe curve above their house. They went outside and found appellant coming from the woods. While visibly shaken, appellant answered their questions coherently, rationally, and intelligibly. From observing appellant, Mr. Plymale formed the opinion that appellant had been drinking because of appellant's slurred speech, unsteadiness on his feet, and appearance.

Officer R. S. Jamison, Fulton County Police Department, arrived on the scene within minutes after the call, checked the evidence on the roadway, and came down the driveway where he found appellant. Appellant had a minor laceration on his forehead, denied further injury except for a sprain to his right elbow, and refused medical attention. Jamison made a preliminary accident investigation to determine what had happened. Appellant admitted to having been driving but did not state when or how much he had drunk. Appellant stated that the accident occurred when he lost control of the car while attempting to avoid colliding with a car fish-tailing in front of him.

Jamison found no evidence of swerving or other evasive action by appellant and formed the opinion that appellant had been driving too fast to negotiate the bad curve. Appellant produced only a Kentucky driver's license and no proof of insurance. He had been a resident of Georgia for about two months.

Observing a fairly strong odor of alcohol, very slurred speech, unsteady gait and balance, and glassy, watery bloodshot eyes, Officer Jamison asked appellant if he would voluntarily submit to the stan-dardized field sobriety tests. From his training and certification, Jamison properly instructed, demonstrated, described, and con-ducted appellant through the alphabet recitation, one-leg stand, heel and toe, and horizontal gaze nystagmus tests. Appellant scored the maximum that would indicate alcohol impairment.

While Jamison conducted these tests, Corporal R. D. Nable of the DUI Task Force arrived and observed the tests being conducted. As a result of appellant's poor performance on the tests, he was asked to voluntarily submit to the administering of an alco-sensor test by Nable who had been trained and certified in conducting such tests. He testified that the alco-sensor design had been approved for use in screening for alcohol consumption by the Division of Forensic Sci-ences ("DFS") for the GBI and that his training to use the device had

also been approved by DFS.

In describing the alco-sensor Jamison stated that it had "a little digital readout," but he did not indicate any reading or state that appellant failed the test; he did indicate that the test result indicated positive for alcohol consumption. Nable described the machine as having a readout that is "numerical," but he did not state any reading or indicate that appellant failed the test; he stated that the test showed positive for alcohol consumption.

Both officers stated that based upon their training, experience, and observation of appellant that his conduct, appearance, and speech as well as the test results indicated that appellant had consumed sufficient alcohol to render him less safe to operate a motor vehicle. Appellant was then arrested. At no time prior to appellant's arrest was he advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), because he was not in custody.

1. Appellant's first enumeration of error contends that the trial court erred in admitting evidence of the alco-sensor test where the proper foundation had not been laid and where the trial court denied appellant's motion for mistrial or curative instructions. *Turrentine v. State*, 176 Ga. App. 145, 146 (1) (335 SE2d 630) (1985), held that OCGA § 40-6-392 did not apply to the alco-sensor test, because such tests are not admissible as " 'evidence of the amount of alcohol or drug in a person's blood . . . as determined by a chemical analysis of the person's . . . breath. . . .' " (Emphasis omitted.) Instead, the alco-sensor is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol. See *Channell v. State*, 172 Ga. App. 156 (322 SE2d 356) (1984); *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984). While the Court approved the method of laying the foundation for testimony regarding the alco-sensor in that case, the Court did not hold that such foundation was the only permissible method to prove "that the device is of a design approved by the DFS." *Turrentine v. State*, 176 Ga. App. 145, 146, supra.

Where the arresting officer testifies that the subject "failed" the alco-sensor test, this indicates a conclusion of law and fact that the blood alcohol level meets the statutory minimum for conviction. Thus, under *Channell v. State*, 172 Ga. App. 156, supra, the Court reversed where the arresting officer gave testimony without a foundation that the defendant "failed" the alco-sensor test. Since the test was being used to indicate the blood alcohol level instead of merely being used as a screening test, then the test had to satisfy the foundational requirements of OCGA § 40-6-392 (a) (1), which it failed to do from the evidence introduced at trial. The Court held, "[b]ecause the required foundation was not laid in the case before us, we hold

that the trial court erred in admitting the officer's testimony that the appellant 'failed' the roadside sobriety test which he had administered to her." *Channell v. State*, 172 Ga. App. 156, 157, supra.

In *Turrentine v. State*, 176 Ga. App. 145, supra, the Court held that the alco-sensor did not come within the ambit of OCGA § 40-6-392, because the test did not measure the amount of alcohol or drugs in the blood but was merely a screening device to show the presence of alcohol in the body. However, to allow the officer administering the test to testify that the defendant "failed" the test, the foundation had to be laid in some fashion that the DFS standards had been satisfied for such admissibility of testimony. Accord *Ronskowsky v. State*, 190 Ga. App. 147, 148 (2) (378 SE2d 185) (1989).

"This court has recognized that an alco-sensor test is not evidence of the amount of alcohol in a person's blood, but is rather a screening device to determine whether there is probable cause that a defendant is driving under the influence of alcohol. [Cits.] Although *Ronskowsky v. State*, [supra], affirmed the admission of the results of an alco-sensor test where the State introduced a document certifying the device had been approved by the GBI's Division of Forensic Services, this does not mean its measurement of the amount of alcohol percentage was permitted. *Ronskowsky* was based on *Turrentine*, supra, which distinguished between the alco-sensor results, which are used to alert the officer to the presence of alcohol, and the intoximeter test, which is used to gauge the amount of alcohol. The officer in this case was permitted to testify that the test showed the presence of alcohol." (Emphasis omitted.) *Mendoza v. State*, 196 Ga. App. 627, 629 (3) (396 SE2d 576) (1990). The facts set forth in this opinion do not indicate that a foundation was required to be laid for such restricted testimony regarding the test results; the better practice should be that if the officer has been trained in the standardized field sobriety tests and in the operation of field alcohol screening tests such as the alco-sensor, then the officer is competent to testify that the device has been approved by the DFS to lay the foundation for his testimony that there was a positive result for the presence of alcohol in the body, since probable cause for arrest has a less restrictive evidentiary standard for admissibility, hearsay, and secondary evidence. See *Smith v. Stynchcombe*, 234 Ga. 780 (218 SE2d 63) (1975); *Callahan v. State*, 179 Ga. App. 556, 561 (3) (347 SE2d 269) (1986); see also as to foundation, *Keenan v. State*, 263 Ga. 569, 571-572 (2) (436 SE2d 475) (1993); *Porche v. State*, 217 Ga. App. 325 (457 SE2d 578) (1995).

No foundation was required in *Hunter v. State*, 143 Ga. App. 541, 543 (5) (239 SE2d 212) (1977) because this involved a screening test to determine the presence of alcohol for purposes of determining probable cause to arrest for DUI. The Court held, "[t]he trial court

did not err in allowing testimony on the breathalizer into evidence. At trial, the state emphasized that the test was not designed to measure the amount of alcohol in the blood but that it was used to confirm the officer's belief that alcohol was present in the driver's body systems. The state never attempted to rely on the breathalizer test as a measure of the defendant's degree of intoxication. Therefore, the test was not governed by the limitations in [OCGA § 40-6-392]." Id.

We find that a proper foundation for the testimony of the officer regarding the alco-sensor test had been laid by the testimony of the officer administering the test that from his training and experience he knew that the DFS of the GBI had approved the design of the alco-sensor for use in detecting the presence or absence of alcohol or drugs in the body system of a person. Therefore, the trial court did not err in admitting the testimony, denying the motion for mistrial and denying curative instructions.

Neither Officer Jamison nor Corporal Nable testified as to a numerical quantity of alcohol in appellant's blood or that he had failed the test which would imply the blood alcohol level. Instead they testified only that appellant showed positive for the presence of alcohol in his body. Thus, there existed no prejudice within the meaning of *Whiteley v. State*, 188 Ga. App. 129 (372 SE2d 296) (1988); *Turrentine v. State*, 176 Ga. App. 145, supra. The trial court did not err.

2. The trial court's refusal to allow the defense expert to remain in the courtroom to assist defense counsel during the State's case and to later testify was assigned as error. The court explored with defense counsel the various reasons urged for the need for the assistance of the expert and what he would testify regarding; since the expert had been retained only 24 hours prior to trial and there were no eyewitnesses and all the investigation facts were contained in the police reports, the court in the exercise of its sound discretion excluded the defense expert from the courtroom during the presentation of the State's witnesses over objection of the defense.

OCGA § 24-9-61 codified in part the common law rule as to sequestration of witnesses, codifying the rule only as to the witnesses of a party and not as to all witnesses. See Orig. Code 1863, § 3787. This codification created the right in one party to require all the other party's witnesses be separated and not to communicate until the conclusion of such party's case in chief. In contrast the common law rule provided that all witnesses for either party be separated and prohibited from communication regarding their testimony.

"The probative purpose here is to prevent one prospective witness from falsely modifying his testimony to meet that of another witness whom he has heard testify. For opposing witnesses, this measure is purely preventive, i.e., it prevents them from contriving a contradiction of the testimony heard. But for witnesses on the same side,

it has additionally a most important advantage, i.e., it reveals discrepancies of detail, where witnesses have agreed on a false story but have failed to prepare on all its details." Wigmore, A Student's Textbook of Evidence, Foundation Press (Brooklyn 1935), § 286, p. 287; see also 75 AmJur2d, Trials, §§ 240, 241; accord *Lackey v. State*, 246 Ga. 331, 334-335 (5) (271 SE2d 478) (1980); *Poultryland v. Anderson*, 200 Ga. 549, 561-562 (2) (37 SE2d 785) (1946); *Gen. Oglethorpe Hotel Co. v. Lanier*, 99 Ga. App. 401, 402 (2) (108 SE2d 769) (1959).

As a matter of right a party can invoke the "rule" only as to the witnesses of the opposite party. *Poultryland v. Anderson*, 200 Ga. 549, supra. However, the court in the exercise of its sound discretion as an inherent power to administer justice may apply the rule to all witnesses of all parties from either direct or indirect communication to preserve the integrity of the testimony. *O'Kelley v. State*, 175 Ga. App. 503, 504-505 (1) (333 SE2d 838) (1985); see also *Groover v. Simmons*, 161 Ga. 93 (129 SE 778) (1925); *Kelly v. State*, 118 Ga. 329, 330 (2) (45 SE 413) (1903).

*Rooks v. State*, 65 Ga. 330, 331 (1880) held, "[t]he law is that 'in all cases either party has the right to have the witnesses of the other party examined out of the hearing of each other.' Whilst this is the rule of law upon this subject, yet it is the practice of the courts, whenever requested to have all the witnesses, both for the state and the accused, called in and sworn, and then instructed to retire beyond the limits of the court-room, and there remain without communication with any one as to what may have been sworn in the case, until they are called to the stand themselves to testify." See also *Pearley v. State*, 235 Ga. 276 (219 SE2d 404) (1975).

In the broad discretion of the trial court, the court has the power, notwithstanding the statute, to permit or deny a witness to remain in the courtroom to assist counsel; a party may request but cannot demand that the court exercise its discretionary powers in regard to allowing a witness to remain in the courtroom. Id.; *Jarrell v. State*, 234 Ga. 410, 420-421 (6) (216 SE2d 258) (1975); *City Bank of Macon v. Kent*, 57 Ga. 283, 291-292 (1) (1876). Even when an expert witness would be assisted by hearing the testimony of preceding witnesses instead of answering a hypothetical question and could assist counsel in conducting the cross-examination, the grant or denial of such exemption lies within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. See *Atlantic & Birmingham R. Co. v. Johnson*, 127 Ga. 392, 399 (4) (56 SE 482) (1907); *Chambers v. State*, 216 Ga. App. 361, 364 (4) (454 SE2d 567) (1995); *Bartell v. State*, 181 Ga. App. 148 (351 SE2d 495) (1986); *Blackburn v. State*, 180 Ga. App. 436 (3) (349 SE2d 286) (1986).

Counsel for appellant reads too much into the dicta of *Greenway v. State*, 207 Ga. App. 511, 514 (428 SE2d 415) (1993), "[n]onetheless,

any resulting error was harmless," referring to the denial by the trial court of the motion to permit the defense expert to remain in the courtroom during the State's case and to testify for the defense. The trial court gave the defense a choice, either to remain in the courtroom to assist defense counsel in conducting the cross-examination and not testify or to not remain and to testify for the defense; defense counsel chose to have the expert witness testify. Absent a manifest abuse of discretion any error by the trial court would be harmless error. *Pearley v. State*, 235 Ga. 276, 277, supra; see also *Groover v. Simmons*, 161 Ga. 93, supra; *Kelly v. State*, 118 Ga. 329, 330 (2), supra. The only manifest abuse of discretion under these circumstances would be to refuse to apply the "rule" upon request, *Poultryland v. Anderson*, 200 Ga. 549, supra, or to exclude a witness who violated the "rule" from testifying. *Pearley v. State*, 235 Ga. 276, 277, supra; *May v. State*, 90 Ga. 793, 800 (2) (17 SE 108) (1893); *Rooks v. State*, 65 Ga. 330, supra. Therefore, the harmless error referred to in the opinion was the trial court's threat to exclude the witness which did not occur, because the witness did testify.

For the foregoing reasons, the trial court did not abuse its discretion by excluding the defense expert from the courtroom during the presentation of the State's case.

3. Appellant's third enumeration of error is that the trial court erred in failing to direct a verdict on the DUI charge where the verdict was not supported by sufficient credible evidence.

As set forth in the statement of the case, there exists sufficient credible evidence not only to require the denial of the motion for directed verdict but also to support the jury verdict. See *Mendoza v. State*, 196 Ga. App. 627, supra; *Merrell v. State*, 192 Ga. App. 100, 101 (1) (383 SE2d 905) (1989). In an "appeal of a criminal conviction, the evidence is to be viewed 'in the light most favorable to the prosecution' (i.e., in the light most favorable to the jury's determination that the defendant is guilty), not in the light most favorable to the defendant." *Adams v. State*, 255 Ga. 356, 357 (338 SE2d 860) (1986). The evidence was such that a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Appellant's fourth enumeration of error contends that the trial court erred in ruling that appellant was not "in custody" within the meaning of *Miranda* and in failing to exclude any resulting evidence.

The investigating officer did not stop or detain appellant who had wrecked his car, had refused medical attention, and who had not requested to call anyone so that he could leave the crash scene. The officers were conducting an accident investigation within the ambit of *Terry v. Ohio*, 392 U. S. 1, 16 (88 SC 1868, 20 LE2d 889) (1968). The officers had the right to detain appellant had he requested to leave

while they completed their accident investigation. Appellant was not "in custody" within the meaning of *Miranda v. Arizona*, 384 U. S. 436, 476, supra; see also *Keenan v. State*, 263 Ga. 569, supra; *Lipscomb v. State*, 188 Ga. App. 322 (372 SE2d 853) (1988); *Montgomery v. State*, 174 Ga. App. 95, 96 (1) (329 SE2d 166) (1985); compare *Hughes v. State*, 259 Ga. 227, 228 (2) (a) (378 SE2d 853) (1989). Therefore, the *Miranda* warnings were not mandated; see *Keenan v. State*, 263 Ga. 569, supra. The trial court did not err in its ruling.

5. The trial court did not err in denying a curative instruction when in final argument the prosecution asked the jurors to put themselves as passengers in the Porsche while appellant drove with impaired coordination, reflexes, perception approaching a dangerous curve knowing that he had been drinking, had slurred speech and bloodshot glassy eyes that jerked with lateral tracking, and had failed the standardized field sobriety tests as well as being positive on the alco-sensor test. There had been no passengers in fact. This argument merely asked the jurors to view the facts while appellant was operating his vehicle. At no time did the prosecutor invoke the "golden rule" argument regarding placing the jurors in the position of the victim. See *White v. State*, 208 Ga. App. 885, 889-890 (6) (432 SE2d 562) (1993); *Horne v. State*, 192 Ga. App. 528 (385 SE2d 704) (1989); *Wolke v. State*, 181 Ga. App. 635 (353 SE2d 827) (1987).

Appellant's counsel made an objection to this argument which was sustained by the trial court but did not request any specific curative instruction be given nor did he move for a mistrial to preserve the alleged error. Therefore, appellant waived any alleged error by failure to perfect the record so that the trial court had an opportunity to correct an error first brought to the trial court's attention.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED AUGUST 29, 1996.

*William C. Head*, for appellant.

*Paul L. Howard, Jr., Solicitor, Rhonda L. Brodsky, Deborah W. Espy, Allison L. Byrd, Assistant Solicitors*, for appellee.