A96A1845, A96A2337. THE STATE v. HOLLER; and vice versa.
(479 SE2d 780)

BIRDSONG, Presiding Judge.

The State appeals the order of the state court granting appellee Roger W. Holler's (a/k/a Roger W. Holler, Jr.) combined motion to suppress and motion in limine. It is enumerated the trial court erred by finding the officer lacked an articulable suspicion for the traffic stop and by excluding testimony as to the numerical results of the alcosensor test for purposes of establishing probable cause to arrest.

The arresting officer is a certified police officer with five years'

experience and assigned to the DUI Suppression Unit. Between the hours of 5:00 and 6:00 p.m., he was traveling in the left southbound lane of Riverdale Road when he observed appellee's vehicle make an abrupt U-turn heading back northbound. In the officer's opinion, the U-turn was not made safely and endangered the safety of northbound drivers, as traffic was heavy, and the U-turn was made in a "real abrupt manner." However, the road is flat with no hills or curves, there are 300 to 400 yards of visibility northbound at that point, and no signs are posted prohibiting U-turns. There were no noticeable equipment defects on appellee's car, no tag deficiency, and he made no apparent driving lane violations. There were two cars, both traveling in the southbound lanes, between the vehicles of the arresting officer and the appellee when the U-turn was made. The officer could not see whether appellee had his turn signals on when he made the U-turn. Other northbound cars were approaching (from an unspecified distance), coming through the intersection of Riverdale Road and Garden Walk. About 36 to 40 feet from appellee, one car with its blinker light on was stopped in a merging northbound lane awaiting clearance to enter a main northbound lane at the time appellee executed the U-turn. The officer observed that this car was delayed by appellee's turn. But no vehicle headed northbound, including the one in the merging lane, had to make any diversionary moves or had to "ram" on their brakes to avoid appellee's vehicle. After appellee made the turn, the officer activated his emergency equipment, made a U-turn himself and thereafter pulled appellee's vehicle over in the Winn-Dixie parking lot. Traffic was heavy at the time of the incident. In order for the officer to complete his U-turn, he had to wait for "some" cars approaching in the northbound lane to pass by and to halt other northbound cars. The officer could not recall from memory what the roadway lane configuration was at the location of the incident.

After the stop was accomplished, the officer observed that appellee's eyes were bloodshot and that he had a strong odor of alcoholic beverage on his breath and person. Appellee admitted to having drunk some rum and Coke but could not remember the amount consumed. He also told the officer that he knew he had made an improper U-turn and that his wife had told him not to make the turn. Appellee agreed to take field sobriety evaluations. The arresting officer testified that appellee incorrectly performed the finger-to-nose test, and appellee exhibited lack of smooth eye pursuit and nystagmus onset at an angle of 45 degrees when taking the horizontal gaze nystagmus evaluation (HGN). (Note: The State subsequently stipulated it would not go forward with any HGN evidence.) The arresting officer also testified that appellee tested "positive" for the presence of ethyl alcohol on the alco-sensor; however, an objection was sustained

when the officer was asked to disclose appellee's alco-sensor test scores. The arresting officer testified that, based on the results of the field sobriety evaluations, appellee's unsafe driving, his observations of appellee, the odor of alcohol on appellee's breath combined with his admission to having had an alcoholic beverage to drink, and the numerical reading obtained on the alco-sensor test, he had formed the opinion that appellee was a less safe driver due to his consumption of alcohol. Thereafter, appellee was placed under arrest and cited both for DUI and improper U-turn.

Appellee's wife testified she was riding with her husband who was driving a rental car. They were looking for and found a grocery store located on the left side of the street, but drove by its entrance. As it looked like there was nothing in the road ahead and no lights were visible on either side of the road or in the approaching roadway intersection, they "decided . . . to turn around and go back." Riverdale Road has two driving lanes in each direction and a middle turning lane. No signs were posted which prohibited U-turns. The wife was watching for oncoming traffic "to make sure it wasn't dangerous" to turn. Before the turn was executed, she saw the lights of two approaching cars, but they were at such a distance that the headlights looked like "little pin lights" coming the other way. There were no cars with their headlights on close behind the rental car. The U-turn was executed from the middle turning lane. The police unit's lights came on immediately after the turn was made; there was no intervening traffic moving northbound which had to pass before the arresting officer could execute his own U-turn. When the U-turn was made, appellee's wife had no concern about her safety or the safety of other vehicles. No cars were impacted by the U-turn; there were no oncoming cars in the vicinity when the U-turn was made. The U-turn was not made when cars were "pulling out" from stores; and appellee did not make a quick U-turn in front of oncoming traffic that night.

The trial court held there was no articulable suspicion for the traffic stop based upon its tacit conclusion that there had been no violation of OCGA § 40-6-121 (3). The trial court found that, although the arresting officer thought the U-turn was made under unsafe conditions, there was no evidence presented as to "why [the officer] thought it was unsafe." The trial court also made the following supporting findings of fact: no other vehicles had to brake, had to swerve, or "had to do anything to avoid [appellee's] car when he made the U-turn." *Held*:

## Case No. A96A1845

1. At trial the State in essence argued that, although numerical test results are not admissible at trial, an exception should be

granted for the admission of this evidence at a suppression hearing for purposes of establishing probable cause for a DUI arrest. As a general rule, the numerical results of an alco-sensor test are not admissible in evidence, as the results of an alco-sensor test are not used as evidence of the amount of alcohol or drug in a person's blood. See *Keenan v. State,* 263 Ga. 569, 571 (2) (436 SE2d 475); *Porche v. State,* 217 Ga. App. 325 (1) (457 SE2d 578); *Turrentine v. State,* 176 Ga. App. 145, 146 (1) (335 SE2d 630); see also *Ayers v. City of Atlanta,* 221 Ga. App. 381, 382 (3) (471 SE2d 240). Even the characterization of the results of an alco-sensor test as "high" has been held to constitute inadmissible evidence of the degree of a suspect's intoxication. *Sturdy v. State,* 192 Ga. App. 71 (383 SE2d 632). However, evidence can be admitted, as was allowed in this case, as to whether a suspect tested positive or negative, or passed or failed, an alco-sensor test; this is consistent with the use of an alco-sensor "as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol." *Turrentine,* supra at 146 (1); see *Sturdy v. State,* supra. Evidence also is admissible whether a suspect refuses to submit to an alco-sensor test. *Keenan,* supra at 572 (2).

A trial court is vested with wide discretion in determining the admissibility of evidence. *Spencer v. State,* 260 Ga. 640, 646 (8) (398 SE2d 179). Admission of evidence is a matter resting largely within the discretion of the trial court; an appellate court will not interfere with a trial court's ruling as to evidence admissibility absent an abuse of discretion. *Gully v. Glover,* 190 Ga. App. 238, 241 (4) (378 SE2d 411); *Santone v. State,* 187 Ga. App. 789, 793 (371 SE2d 428). The State has failed to show an abuse of discretion by the trial court in following the general rule and declining to allow evidence as to the numerical score appellee received on an alco-sensor test to be admitted in evidence at a suppression hearing. See *Porche,* supra; cf. *Mendoza v. State,* 196 Ga. App. 627, 629 (3) (396 SE2d 576). Accordingly, we will not interfere with that ruling. *Gully,* supra; *Santone,* supra. Further, as an alco-sensor test is not used as evidence as to the amount of alcohol or drugs in a person's blood, we decline this opportunity to create a blanket exception which would serve as precedent for making alco-sensor numerical test results admissible (for the limited purpose of establishing probable cause to arrest) at all future suppression hearings. The State's assertion of error as to this matter is without merit.

2. The State enumerates that the trial court erred in granting appellee's combined motion to suppress or in limine when it ruled that the arresting officer lacked articulable suspicion to stop appellee's car. The burden of proof of establishing that appellee was not subjected to an illegal seizure of his person rests upon the State.

*State v. Goodman*, 220 Ga. App. 169, 170 (1) (469 SE2d 327); see *State v. Johnston*, 160 Ga. App. 71, 74 (286 SE2d 47), aff'd on other grounds, 249 Ga. 413 (291 SE2d 543).

(a) "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]. [Cits.] An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. [Cits.]" *Whren v. United States*, 517 U. S. ___ (116 SC 1769, 135 LE2d 89, 95). Such a stop does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective. Id. Such a stop could be effected even as a mere subjective pretext for engaging in other law enforcement objectives, as long as probable cause exists to believe that a traffic violation has occurred. See *Whren*.

The record reveals that the trial court made no express ruling whether the stop of appellee's vehicle based upon a traffic violation was a pretextual stop to investigate appellee for possible DUI. Even if the stop of appellee's car was pretextual, it would not render the resulting seizure "unreasonable" under the Fourth Amendment prohibition if probable cause did exist for the arresting officer to believe that a traffic violation had occurred. Further, appellee's vehicle could be stopped and appellee placed temporarily in an investigative detention status pending a further limited investigation inquiry provided the officer had an articulable suspicion to justify such a stop. See generally *Mallarino v. State*, 190 Ga. App. 398, 401 (2) (379 SE2d 210). Thus, the issue before us is whether the trial court correctly concluded that there existed no articulable suspicion for the vehicle stop (which per force constituted a finding that neither was the stop based on probable cause).

(b) The record reveals that the sole basis for the initial stop of appellee's vehicle was the arresting officer's belief that appellee had made an illegal U-turn. However, the findings of fact and law by the trial court, after its examination of the conflicting evidence given at the suppression hearing, tacitly included a determination that the State failed to carry its burden of showing the officer had probable cause to believe that appellee had committed a violation of OCGA § 40-6-121 when making the U-turn.

"When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is

heard by the trial judge, that judge sits as the trier of facts. The trial judge 'hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.' [Cit.] Second, the trial court's decision with regard to 'questions of fact and credibility . . . must be accepted unless clearly erroneous.' [Cit.] . . . Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. [Cit.] On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant and their application to this trial court's order would demand that the court's order be affirmed." (Emphasis and footnote omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646). The findings of fact by the trial court are not clearly erroneous and are supported by some evidence of record; the trial court did not err in concluding that the traffic stop was not supported by a reasonable (articulable) suspicion. Compare *State v. Goodman*, supra; *State v. Jones*, 214 Ga. App. 593 (448 SE2d 496).

### Case No. A96A2337

In view of our holding in Case No. A96A1845, the appeal in Case No. A96A2337 is moot. See *Atlanta Gas Light Co. v. Ga. Textile &c. Assn.*, 266 Ga. 738 (1) (470 SE2d 230).

*Judgment affirmed in Case No. A96A1845. Appeal dismissed in Case No. A96A2337. Beasley, C. J., and Blackburn, J., concur specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in Division 1. As to Division 2, the trial court must be upheld because it made a fact determination which is supported by defendant's evidence, although it is contrary to the State's evidence. Its resolution of the conflict is not clearly erroneous, so we are bound to accept it. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

The trial court apparently did not accept the officer's version of the circumstances existing at the time the defendant made the U-turn. The court measured the officer's stop of defendant against the traffic law which prohibits a driver from turning a vehicle "so as to proceed in the opposite direction: . . . [w]here such turn cannot be made in safety and without interfering with other traffic." OCGA § 40-6-121 (3). The court rejected the officer's testimony about the conditions then present and his judgment that the conditions were unsafe for a U-turn or interfered with other traffic. The trial court

also rejected, or regarded as inconsequential, the officer's testimony that defendant stated when stopped that he had made an improper turn and had been advised by his wife not to make it. The court gave credence instead to defendant's version, which was based on his wife's testimony.

This we must accept, as the factfinder determines credibility. *Tate*, supra. It matters not whether the stop was pretextual or for the reason articulated by the officer. Even if for the latter, it was unsupported by indicia or symptoms of unsafety or traffic interference, when viewed in the context of the facts found by the trial court. The case does not reach the question of pretext, so I do not join in the discussion of the meaning of *Whren v. United States*, 517 U. S. ___ (116 SC 1769, 135 LE2d 89) (1996).

Based on the facts, the trial court concluded that the officer "lacked articulable suspicion to stop Defendant." This was the application of the correct standard, as an investigating traffic stop must be based on information (including personal observation), supporting a "reasonable suspicion that [the person stopped] was engaged in criminal activity." *Alabama v. White*, 496 U. S. 325, 331 (110 SC 2412, 110 LE2d 301) (1990).

BLACKBURN, Judge, concurring specially.

I concur fully with the majority opinion with the exception of the dicta concerning the authority of police officers to make pretextual stops.

DECIDED DECEMBER 17, 1996.

*Keith C. Martin, Solicitor, Evelyn Proctor, Assistant Solicitor*, for appellant.
*William C. Head*, for appellee.