**UNITED STATES of America**

v.

**Ralph BECKMAN.**

**CRIM. No.AMD 98–0012.**

United States District Court, D. Maryland.

April 24, 1998.

Paul A. Marone, Special Asst. U.S. Atty., Aberdeen Proving Ground, MD, for Plaintiff.

Ronald I. Kurland, Baltimore, MD, for Defendant.

ORDER

DAVIS, District Judge.

Appellant Ralph Beckman was arrested and charged with, *inter alia,* driving while intoxicated, in violation of Maryland law as assimilated under 18 U.S.C. § 13, within the special territorial jurisdiction of the United States. After the Magistrate Judge denied his motion to suppress evidence, Beckman entered a conditional guilty plea to the charge of driving under the influence of alcohol. The Magistrate Judge stayed the execution of sentence pending appeal. The parties have fully briefed the issues and the matter is before me for decision. For the reasons stated below, the conviction is vacated, and the case is remanded with directions that the Appellant's motion to suppress evidence be granted.

Beckman was driving on Maryland Route 24 at 3:50 a.m. on November 11, 1996, approaching the entrance to Aberdeen Proving Ground ("APG"), a federal enclave. Approximately 600 feet from the entrance gate, but while inside the boundary of the federal facility, Beckman decided not to approach the gate but, instead, to make a u-turn. He did so, and in making his u-turn, he crossed a double yellow line separating the lanes of Route 24. When Beckman made his u-turn maneuver, he was observed by Officer Billy Thompson, who was stationed in his police vehicle near the APG entrance gate. Believing that Beckman had made an illegal u-turn, i.e., a u-turn on the crest of a grade out of sight of another vehicle approaching within 500 feet, *see* MD. CODE ANN. TRANS. § 21–602(b), Officer Thompson gave chase. Eventually, Officer Thompson stopped and detained Beckman. After questioning Beckman, Officer Thompson developed cause to believe that Beckman was operating his vehicle under the influence of alcohol and arrested him.

Beckman moved to suppress the evidence discovered by Officer Thompson as a result of the stop (including the evidence of his alcohol consumption). Beckman argued that the stop was illegal because there was no probable cause (or reasonable suspicion) that

he had made an illegal u-turn. The parties stipulated to the facts and presented written and oral arguments to the Magistrate Judge.

The Magistrate Judge resolved the motion to suppress on the basis of the above stipulated facts. The Magistrate Judge concluded, and the government does not challenge the conclusion on appeal, that there was no basis for the stop on the ground that the u-turn was a prohibited u-turn on the crest of a grade; there was no grade, for if there had been, Officer Thompson would not have been able to observe Beckman's maneuver. Nevertheless, applying an objective analysis, and properly eschewing any attempt to examine the subjective intention of Officer Thompson, the Magistrate Judge concluded that Officer Thompson could be deemed to have acted reasonably when he stopped and detained Beckman. This conclusion was based on the Magistrate Judge's view that, although "it may very well be that there is no such crime," the offense of "crossing a double yellow line to make a u-turn" might well have provided a basis for a stop by a hypothetical officer. In other words, although a left turn across a double yellow line is indisputably allowed under Maryland law, see MD. CODE ANN. TRANS. § 21–307(d), in the view of the Magistrate Judge, a u-turn is distinguishable from a left turn. Therefore, applying an objective test of probable cause, because Beckman made a maneuver with his vehicle which, hypothetically, an officer could have reasonably believed was an offense under the Maryland Transportation Code, i.e., "failure to obey a traffic control device," to wit, crossing double yellow lines for a purpose (to make a u-turn) not expressly allowed by law, the stop was "objectively reasonable" and the exclusionary rule should not be applied.

The Magistrate Judge relied heavily on an unreported Fourth Circuit case in which a motorist made a left turn out of a Postal Service parking lot onto a city street, against the command of a clearly-placed sign prohibiting such a turn, which was posted on the Postal Service lot. The motorist was detained on the street and, as a result of the stop, was discovered to be operating on a suspended driver's license. The Magistrate Judge had found the motorist not guilty of the illegal left turn, because the left turn had only been completed on the city street, and had not occurred within federal jurisdiction, but he refused to suppress the evidence of the suspended license offense discovered after the stop. The Fourth Circuit affirmed, concluding that it was objectively reasonable for the detaining officers to stop the defendant's vehicle in reliance upon the sign posted in the Postal Service parking lot and the underlying federal regulations. 39 C.F.R. § 232.1(d) (1994). *See U.S. v. Jones,* 47 F.3d 1166 (4th Cir.1995)(unreported), 1995 WL 81849, citing *Michigan v. DeFillippo,* 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

Clearly, this case is distinguishable. In *Jones,* there was indeed a sign which specifically prohibited the maneuver performed by the motorist, and on which the detaining officers actually relied. The analogy from such a real world event to an hypothesis of an arguable basis for construing a textually inapplicable statutory provision regarding "traffic control devices" to a driving maneuver specifically regulated by the text of that same statute is insufficient to shore up the purported reasonableness of the stop in this case.

Thus, I reject the reasoning of the lower court. I am satisfied that, as a matter of law, under the Maryland traffic regulatory regime, a left u-turn across a double yellow line is not prohibited by the statutory provision which requires obedience to "traffic control devices." *Accord State v. Caswell,* 551 N.W.2d 252, 254 (Minn.App.1996)(agreeing with contention that under Minnesota traffic code "an individual generally may make a u-turn over a double yellow line in the absence of a posted sign"). Thus, the hypothetical reasonableness which the lower court attributed to the hypothetical officer under the facts and circumstances of this case was not warranted.

In my view, a reasonably well-trained officer observing what Officer Thompson observed on November 11, 1996, would have known that he or she lacked any reasonable basis to believe that the motorist under observation had made an unlawful maneuver under Maryland law. *Cf. State v. Holler,* 224

Ga. App. 66, 479 S.E.2d 780 (1996)(affirming trial court's grant of motion to suppress because officer lacked probable cause to believe motorist made an unlawful u-turn, although u-turn was made in officer's presence).

It is undoubtedly true that law enforcement officers are often permitted to make erroneous, though reasonable, determinations of fact which lead to Fourth Amendment intrusions, without violating the Fourth Amendment, or if a violation results, without being burdened by the exclusionary rule. *See generally Maryland v. Garrison,* 480 U.S. 79, 86, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In the context of the watered down probable cause/reasonable suspicion standard applicable to routine motor vehicle stops for traffic violations, however, patent legal errors by law enforcement officers should not be lightly disregarded through a forgiving slavishness to objective standards based on hypothetical scenarios, informed by combing through a transportation code to discover some arguable basis for calling a stop "reasonable." *See State v. Greer,* 114 Ohio App.3d 299, 683 N.E.2d 82 (1996).

In *Greer,* a police officer erroneously concluded that a motorist had made an illegal u-turn, stopped the vehicle, and developed probable cause to believe the motorist was operating under the influence of alcohol. The trial court suppressed the evidence obtained as a result of the stop. A panel of the Ohio Court of Appeals reversed the grant of the suppression motion, reasoning that a narrow class of mistakes of law permit application of a good faith exception to the exclusionary rule, but that ordinarily, mistakes of law should not result in the application of a good faith exception:

> The case before us involves a police officer's mistake of law, rather than a mistake of fact. Courts must be cautious in overlooking police officers' mistakes of law, for the reasons set forth in *People v. Teresinski* (1980), 26 Cal.3d 457, at 462–464, 162 Cal.Rptr. 44, at 47, 605 P.2d 874, at 876–877:
>
> > "If we were to find Officer Rocha's mistake of law [that the observed conduct violated a loitering ordinance] reasonable under these circumstances, we

would provide a strong incentive to police officers to remain ignorant of the language of the laws that they enforce and of the teachings of judicial decisions whose principal function frequently is to construe such laws and to chart the proper limits of police conduct."

Even that court hinted that the result might be different under exceptional circumstances:

> "We need not decide, however, whether under exceptional circumstances an officer's reasonable mistake of law might validate police conduct because in this case the officer's mistake cannot be found reasonable." *Id.*

Similarly, in *People v. Molenda* (1979), 71 Ill.App.3d 908, 28 Ill.Dec. 393, 394, 390 N.E.2d 560, 561, an Illinois court, in holding that an officer's mistake of law invalidated a stop, opined:

> "We might be of a different view if the statute was ambiguous, or required judicial construction to determine its scope or meaning."

683 N.E.2d at 85.

This reasoning is persuasive here. There is no ambiguity in the Maryland provision regarding u-turns, nor does this case present any exceptional circumstances. Moreover, the Magistrate Judge's ruling that Officer Thompson lacked a reasonable basis for believing that the prohibition on u-turns was violated by Beckman is not challenged by the government. Rather, the government has sought to defend a theory first introduced by the Magistrate Judge at the suppression hearing regarding the "possibility" of interpreting a provision of the Maryland Transportation Code, not otherwise implicated in the case, in a manner that could justify a *post hoc* judgment that Officer Thompson's stop was "objectively reasonable." It does not denigrate the need for vigorous enforcement of drunken driving laws to observe that this approach to Fourth Amendment claims should not be countenanced.

Accordingly, I am persuaded that the stop and detention of Appellant was not a reasonable seizure under the Fourth Amendment, and the evidence obtained as a result of the

stop of Appellant's vehicle by Officer Thompson should have been suppressed.

In accordance with the foregoing, it is this 24th day of April, 1998, by the United States District Court for the District of Maryland, ORDERED that

(1) The judgment is VACATED; and

(2) The case is REMANDED WITH DIRECTIONS THAT THE MOTION TO SUPPRESS BE GRANTED.