## A04A2099. LENHARDT v. THE STATE.
### (610 SE2d 86)

JOHNSON, Presiding Judge.

Robert Lenhardt was charged with driving with an expired tag, driving under the influence of alcohol (driving with an unlawful blood-alcohol concentration of 0.08 grams or more), and reckless driving. A jury found him guilty of the tag violation and of DUI. The trial judge directed a verdict of not guilty on the reckless driving charge, specifically finding that there was no evidence that Lenhardt was driving erratically or in a less safe manner. Lenhardt appeals from the DUI conviction, contending that the trial court erred in denying his motion to suppress results of chemical tests of his blood. We find no error and affirm the convictions.

1. Lenhardt contends the trial court should have suppressed evidence obtained from the chemical testing of his blood because the officer lacked probable cause to arrest him for driving under the influence of alcohol. According to Lenhardt, there was no evidence that he was a less safe driver, and the alco-sensor test result did not establish probable cause.

On appeal from a ruling on a motion to suppress, we construe the evidence most favorably to affirming the trial court's factual findings and judgment.[1] So viewed, the evidence shows that an officer with the Georgia State Patrol was patrolling I-85 in Coweta County when he observed Lenhardt driving a vehicle with an expired tag. The officer initiated a traffic stop, but Lenhardt continued to drive "a good little while" before pulling over; the officer saw no factors justifying Lenhardt's delay in stopping the car.

When the officer approached the stopped car, he detected an odor of alcohol about Lenhardt. He asked Lenhardt if he had been drinking. Lenhardt replied that he had not. The officer noticed that Lenhardt constantly looked down, and that his eyes were "bloodshot red and kind of glossy." The officer administered an alco-sensor test, which showed a positive result. The officer noted the numerical result (0.097) on the uniform traffic citation issued to Lenhardt. At this point, Lenhardt admitted to having consumed alcohol. Because he

---

[1] *State v. Sledge*, 264 Ga. App. 612, 613 (591 SE2d 479) (2003).

was concerned about the dangers of conducting additional sobriety tests on the shoulder of the interstate, the officer did not conduct any other field tests.

The officer arrested Lenhardt for DUI and read him the implied consent notice. In response to the notice, Lenhardt stated that he wanted to have an independent test performed at Georgia Baptist Hospital in Atlanta. The officer replied that Georgia Baptist was "a great distance" from his patrol area, and that he could take Lenhardt to two of the local hospitals. Lenhardt chose to have his test done at one of those two hospitals, Peachtree Regional/Newnan West Hospital. While there, the officer also obtained a test for the state.

The trial court did not err in denying the motion to suppress. The officer lawfully stopped Lenhardt for driving with an expired tag.[2] When the officer approached Lenhardt, he detected the odor of alcohol, and noticed that Lenhardt's eyes were bloodshot and that he looked down throughout the encounter. Lenhardt eventually admitted that he had been drinking alcohol, and the alco-sensor test result was positive. Under the totality of circumstances, the officer had probable cause to arrest Lenhardt for DUI.[3]

Lenhardt further maintains that the officer improperly relied upon the alco-sensor numerical result to establish probable cause. It is true that, as a general rule, the numerical results of an alco-sensor test are not admissible in evidence.[4] However, the alco-sensor, and whether a motorist tested positive or negative on it, can be used as an initial screening device to aid police in determining whether probable cause exists to arrest a motorist suspected of driving under the influence of alcohol.[5] The positive result, *viewed along with the other evidence discussed above*, was sufficient to establish probable cause.[6]

Lenhardt's contention that the officer lacked probable cause to arrest him because there was no evidence that he was a "less safe" driver is also without merit. The state charged him with violating OCGA § 40-6-391 (a) (5) (per se DUI for driving with a blood-alcohol concentration of 0.08 grams or more), not with violating OCGA § 40-6-391 (a) (1) (driving under the influence of alcohol to the extent it is less safe to drive). OCGA § 40-6-391 (a) (5) does not require proof that it was "less safe" to drive.[7] And he was convicted of driving under

---

[2] See *Maxwell v. State*, 249 Ga. App. 747, 748 (549 SE2d 534) (2001).

[3] See *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996); *Temples v. State*, 228 Ga. App. 228, 231 (491 SE2d 444) (1997).

[4] *State v. Holler*, 224 Ga. App. 66, 69 (1) (479 SE2d 780) (1996).

[5] Id.

[6] See *Cann-Hanson*, supra (officer's observation that driver had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest for DUI).

[7] See generally *Power v. State*, 231 Ga. App. 335, 337 (1) (499 SE2d 356) (1998) (subsection

the influence of alcohol in that he drove with an unlawful blood-alcohol concentration, not with being a less safe driver. Therefore, this enumeration is without merit.

2. Lenhardt filed a motion to suppress and motion in limine to exclude the results of the chemical testing of his blood, claiming he was denied his right to an independent test from qualified personnel of his own choosing. He argues that the arresting officer denied his request to go to Georgia Baptist Hospital in downtown Atlanta for an independent test. The trial court found that Lenhardt's request was unreasonable given the distance, the availability of closer hospitals, the limited number of patrol officers working in Coweta County at the time, and the fact that Lenhardt accepted the choices given him. There was no error.

OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing. As this Court has recognized, the "of his own choosing" language is not superfluous.[8] Rather, a suspect is entitled to a meaningful opportunity to choose the testing facility.[9] If the suspect's choice is unreasonable, however, a law enforcement officer is justified in refusing to accommodate the request.[10] The trial court must determine whether, under the totality of the circumstances, the suspect's request was reasonable.[11] The factors the trial court may consider in resolving this issue include the following: (1) availability of or access to funds to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of the requested facilities; and (5) opportunity and ability of accused to make arrangements personally for the testing.[12]

In this case, the officer, a Georgia State Patrol officer assigned to Coweta County, read Lenhardt the implied consent notice and then requested that Lenhardt submit to a blood test. Lenhardt said he wanted to have his own test done at Georgia Baptist Hospital in downtown Atlanta. The officer replied that Georgia Baptist was too far from his patrol area, and told Lenhardt that he could go to two hospitals in Coweta County. According to the officer, his department "want[s] us to stay within that county if we're patrolling that county."

---

(5) does not require the state to prove impaired driving ability).

[8] *Hendrix v. State*, 254 Ga. App. 807, 808 (564 SE2d 1) (2002); *Joel v. State*, 245 Ga. App. 750, 753 (538 SE2d 847) (2000).

[9] *Hendrix*, supra.

[10] Id.

[11] Id.

[12] Id.

He also recalled that there was a shortage of officers on patrol in the area that evening. Lenhardt was "okay" with the hospital choices the officer gave him. After choosing to go to Peachtree Regional, Lenhardt did not ask to be taken to any other facility.

The issue raised in this enumeration is whether Lenhardt's request to be taken to Atlanta for an independent test was reasonable. According to the officer, he refused to take Lenhardt to Atlanta because it was too far, was outside of his patrol area, his department was short-staffed, and there were other hospitals in the area. We note that the mere fact that the requested facility is in another jurisdiction does not justify an officer's refusal to accommodate a suspect.[13] The location of the hospital in a different jurisdiction is merely one factor to be considered.[14] Here, Lenhardt presented evidence that the requested facility was 28.8 miles away, while Peachtree Regional was only 15.9 miles away. To accommodate Lenhardt's request, the officer would have been required to drive 57 miles round trip, rather than 30 miles round trip.

There is no bright line defining at what point the distance to the requested facility renders the suspect's request unreasonable or when the time factor becomes too onerous.[15] Here, however, the trial court concluded that the officer acted reasonably in refusing to drive Lenhardt to downtown Atlanta. Given that significant time and distance would have been involved in driving Lenhardt to Atlanta, and that Lenhardt acquiesced in the choices given him by the officer, there is some evidence supporting the trial court's ruling.[16] As there is evidence supporting the ruling of the trial court, it will not be reversed.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 7, 2005 —
RECONSIDERATION DENIED JANUARY 28, 2005.

*Earl D. Clark, Jr.,* for appellant.
*Robert Stokely, Solicitor-General, Seay VanPatten-Poulakos, Monica N. Hamlett, Sandra N. Wisenbaker, Assistant Solicitors-General,* for appellee.

---

[13] Id.
[14] Id. at 808-809.
[15] Id. at 809.
[16] See id. Compare *Akin v. State*, 193 Ga. App. 194, 195 (387 SE2d 351) (1989).