## A10A1492. RITTER v. THE STATE.

(703 SE2d 8)

MIKELL, Judge.

A Dawson County jury convicted William Ritter of driving under the influence (less safe), driving under the influence (per se), and failure to maintain lane. On appeal from the denial of his motion for new trial, Ritter argues that his convictions should be reversed for two reasons: (1) his request for an independent blood test was not reasonably accommodated; and (2) the trial court erroneously admitted the inspection certificates for the Intoxilyzer 5000. Finding no error, we affirm.

The record shows that at approximately 8:00 p.m. on March 10, 2009, Investigator James Bruhl of the Dawson County Sheriff's Office stopped Ritter after he drove across the center line twice. Bruhl testified that he approached Ritter's vehicle and could smell alcohol coming from inside the vehicle when Ritter rolled down his window. Ritter submitted to sobriety field testing, including the horizontal gaze nystagmus test, during which he exhibited four of the six clues, and the alco-sensor test, which was positive for alcohol. Based on Ritter's performance on the evaluations, his manner of driving and bloodshot eyes, and the odor of alcohol, Bruhl concluded that Ritter was under the influence to the extent that he was a less safe driver and arrested him. Bruhl also testified that he searched Ritter's car and found an open 12-pack of beer. Bruhl read Ritter the implied consent notice for suspects over the age of 21, then asked Ritter to consent to a breath test. Ritter's two breath test samples indicated blood alcohol levels of 0.151 and 0.150.

1. In his first enumerated error, Ritter argues that the trial court erred in concluding that his request for an independent blood test was reasonably accommodated by Bruhl. We disagree.

It is undisputed that Ritter requested an independent blood test. Bruhl testified that Ritter requested that the test be conducted at his doctor's office in Alpharetta on the following morning; that Alpharetta was 30 to 45 minutes away; that he informed Ritter that the test would have to be done that night; that he offered to take Ritter to a closer facility in a neighboring county; and that he offered Ritter a phone book to find a facility. Bruhl further testified that Ritter insisted on going to his personal physician but never provided him with a name or number to contact him.

On cross-examination, Bruhl testified that he did not recall if Ritter asked to use the phone to call his personal physician; that Ritter did not make a phone call while in his custody; that Bruhl thought driving 45 minutes to Alpharetta was unreasonable; that at that time of night, most personal physicians' offices were closed; that his department was shorthanded that night and he would have been

gone for two to two-and-a-half hours had he driven to Alpharetta; and that once they arrived at the jail, Ritter could have used the phone to call his doctor.

Ritter filed a motion in limine to exclude the results of the breath test and raised the issue in his motion for new trial. The trial court denied both motions, concluding that Bruhl reasonably accommodated Ritter's request for an independent blood test because he offered to take Ritter to another facility in an adjacent jurisdiction and that Bruhl's refusal to drive Ritter to Alpharetta was reasonable.

Pursuant to OCGA § 40-6-392 (a), "evidence of the amount of alcohol or drug in a person's blood, urine, breath, or other bodily substance at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath, or other bodily substance shall be admissible." However, where such a test is performed, "[t]he person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer."[1]

> Where an officer has failed to obtain an additional test requested by the accused person, it is incumbent on the trial court to determine whether that failure was justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks the independent test.[2]

The factors to be considered by the trial court in making the determination, include, but are not limited to, the following:

> (1) availability of or access to funds or resources to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of requested facilities, [e.g., whether the requested facility is in a different jurisdiction]; and (5) opportunity and ability of accused to make arrangements personally for the testing.[3]

The determination is one "which depends largely on local circum-

---

[1] OCGA § 40-6-392 (a) (3).

[2] (Citation omitted.) State v. Anderson, 258 Ga. App. 127, 128 (572 SE2d 758) (2002).

[3] (Punctuation and footnote omitted.) State v. Howard, 283 Ga. App. 234, 236 (641 SE2d 225) (2007). Accord Brown v. State, 253 Ga. App. 741, 743 (2) (560 SE2d 316) (2002), citing Joel v. State, 245 Ga. App. 750, 752 (538 SE2d 847) (2000).

stances, circumstances which the trial court can adjudge far better than we."[4]

"[T]here is no bright line defining at what point the distance to the requested facility renders the suspect's request unreasonable or when the time factor becomes too onerous."[5] In the instant case, the trial court found that complying with Ritter's request to drive to Alpharetta would have taken the officer out of his jurisdiction, as Alpharetta was 30 to 45 minutes away; that Bruhl's police department was short of staff on the evening in question, and that there were facilities in neighboring jurisdictions, which Bruhl offered to Ritter as an alternative. Additionally, there was no evidence presented that Ritter had made arrangements to be tested at his personal physician's office.[6] As we are bound to view the evidence most favorably to uphold the trial court's findings and judgment,[7] and the evidence here supports the trial court's ruling that Ritter's request was reasonably accommodated,[8] this enumerated error fails.

2. Next, Ritter argues that the quarterly inspection certificates and diagnostic test slips for the Intoxilyzer 5000 were erroneously admitted into evidence. Again, we find no error.

In *Brown v. State*,[9] our Supreme Court held that "breath-testing device certificates are records made within the regular course of the business within the meaning of OCGA § 24-3-14 and may, upon the proper foundation being laid, be introduced into evidence under the business record exception to the hearsay rule."[10] OCGA § 40-6-392 (f)

---

[4] (Punctuation and footnote omitted.) *State v. Metzager*, 303 Ga. App. 17, 19 (692 SE2d 687) (2010).

[5] (Punctuation and footnote omitted.) *Smith v. State*, 277 Ga. App. 81, 84 (625 SE2d 497) (2005).

[6] See id.

[7] *Hulsinger v. State*, 221 Ga. App. 274, 276 (470 SE2d 809) (1996).

[8] See *Lenhardt v. State*, 271 Ga. App. 453, 455-456 (2) (610 SE2d 86) (2005) (evidence that location requested by accused was too far away and outside of officers' patrol area, that officer's department was short-staffed, and that there were other hospitals in the area supported trial court's conclusion that request was reasonably accommodated); *Hulsinger*, supra (trial court did not abuse its discretion in finding that the officer made reasonable efforts to help the defendant obtain his independent test under the totality of the circumstances, particularly when the defendant did not produce evidence that the test could have been performed by reasonable means at the time of his request). Compare, *Metzager*, supra (grant of motion to suppress affirmed where officer unilaterally chose the location for the independent test); *Cole v. State*, 263 Ga. App. 222, 224 (587 SE2d 314) (2003) (results should have been suppressed where the facility where blood could have been tested was closed and the officer assumed others in the vicinity were also closed and offered the accused no alternative testing measures).

[9] 268 Ga. 76 (485 SE2d 486) (1997).

[10] (Citations omitted.) Id. at 80-81. See also *Caldwell v. State*, 230 Ga. App. 46 (495 SE2d 308) (1997) ("by law certificates are self-authenticating and satisfy the requirement of proof that the intoximeter operated properly," but proof of this fact may also be established by other evidence) (whole court) (citations omitted).

sets out the requirements for the admissibility of inspection certificates for breath-testing instruments,[11] and provides specifically that "[w]hen properly prepared and executed, as prescribed in this subsection, the certificate shall, notwithstanding any other provision of law, be self-authenticating [and] shall be admissible in any court of law." The certificate of inspection admitted into evidence complied with OCGA § 40-6-392 (f).

We also note that Bruhl testified that the diagnostic test, which checks the function of the internal workings of the machine, showed that the machine was working properly on the night the test was administered. The slip from the diagnostics test was admitted into evidence. Bruhl also testified that he knew how to operate the machine, and his certification to conduct analyses on the machine was admitted as well.

Ritter cites *Melendez-Diaz v. Massachusetts*[12] for the proposition that the documents were not admissible because they were prepared solely for the purpose of prosecution, but that case does not warrant a different result here. In *Melendez-Diaz*, the issue was whether certificates of analysis that showed the results of forensic analysis performed on controlled substances were testimonial in nature and thus inadmissible unless the analysts themselves testified at trial.[13] The Court held that the admission of the certificates without the analysts' testimony violated the Confrontation Clause.[14] *Melendez-Diaz* explained that "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. But that is not the case if the regularly conducted business activity is the production of evidence for use at trial."[15] In the instant case, the certificates at issue do not fall within the class of documents prohibited by *Melendez-Diaz* because they are not generated for the prosecution of a particular defendant. Accordingly, the documents at issue were properly admitted.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

---

[11] The statute provides that
[e]ach time an approved breath-testing instrument is inspected, the inspector shall prepare a certificate which shall be signed under oath by the inspector and which shall include the following language: "This breath-testing instrument (serial no. ___) was thoroughly inspected, tested, and standardized by the undersigned on (date ___) and all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order."

[12] ___ U. S. ___ (129 SC 2527, 174 LE2d 314) (2009).

[13] Id. at 2530-2531 (I).

[14] Id. at 2532 (II).

[15] (Citation omitted.) Id. at 2538 (III) (D).

DECIDED SEPTEMBER 16, 2010 —
RECONSIDERATION DENIED NOVEMBER 3, 2010.

*Banks & Stubbs, Rafe Banks III*, for appellant.
*Lee Darragh, District Attorney, Conley J. Greer, Assistant District Attorney*, for appellee.