## A11A0097. THE STATE v. DAVIS.
### (711 SE2d 76)

DOYLE, Judge.

The trial court granted Danielle Davis's motion to suppress the evidence of a State-administered breath test on the basis that the State did not reasonably accommodate Davis's request for an independent test. The State appeals, and we affirm for reasons that follow.

The record shows that on June 27, 2009, the Georgia State Patrol set up a roadblock in downtown Athens. When Davis, who was driving a Dodge Durango, was approximately five or six cars away from the officers at the roadblock, she and her passenger exited the vehicle and attempted to switch places. Captain John Miller asked Davis why she was switching places with her passenger, and Davis replied that she didn't think she was supposed to be driving the passenger's car because she wasn't insured to do so. Miller detected the odor of alcohol coming from both women, and he asked them if they had been drinking. After Davis and the passenger each indicated that she had "had a few drinks earlier in the night," Miller administered a preliminary alco-sensor test; both women registered positive for alcohol.

Officer Michael Johnson then spoke with Davis, and he smelled "an odor of alcohol emitting from her person and breath" and noted that "[s]he had slurred speech and bloodshot eyes." She was argumentative, used profanity, breathed rapidly, and cried during her interaction with Officer Johnson. Davis registered positive on a second alco-sensor test administered by Johnson, and she admitted to him that she had consumed four beers and two shots approximately an hour and a half earlier. Johnson conducted the horizontal gaze nystagmus field sobriety test on Davis, and he observed a total of six out of six clues for impairment; Johnson did not administer the walk-and-turn or one-leg-stand field sobriety tests because they were standing on a steep incline.

Johnson then placed Davis under arrest and read her the Georgia Implied Consent Notice. Davis initially refused to submit to the State-administered chemical breath test, but she then agreed to do so. Davis did, however, request a blood test, and she reiterated her request after she completed the chemical breath test. Johnson told Davis that he would "be glad to take her to get a blood test" and that she should choose the location for the test. When Davis indicated that she didn't know where she wanted to take the test, Johnson suggested two hospitals in the area, St. Mary's or Athens Regional. The officer also told Davis that she would have to pay for the test. According to Johnson, he was unfamiliar with the payment protocol at St. Mary's and Athens Regional, but the hospitals where he had

taken previous suspects for independent chemical tests required payment at the time of the tests. Davis then explained that her purse was in the passenger's vehicle, which was no longer at the scene, and that she therefore could not pay for a blood test. Thereafter, Davis changed her request for a blood test to a second breath test, and when Johnson asked where she wanted to have it administered, Davis stated that she wanted to take it "here," at the scene. Davis then asked if the officer would drop the charges if the second test indicated that her blood alcohol was under the legal limit, and he replied negatively; Davis then withdrew her request for another breath test.

Davis was charged with driving while having an unlawful alcohol concentration (DUI per se)[1] and driving under the influence to the extent that it was less safe (DUI less safe).[2] Davis filed a motion to suppress the evidence of the State-administered breath test, and the trial court granted the motion after an evidentiary hearing.[3]

On appeal, the State contends that the trial court erred by granting Davis's motion to suppress the results of the breath test administered by the State, arguing that (1) Officer Johnson made reasonable efforts to accommodate her request for an independent chemical test, and (2) Davis withdrew her request for the independent blood test, and therefore no reasonable accommodation was necessary.

Under OCGA § 40-6-392 (a), "evidence of the amount of alcohol or drug in a person's blood, urine, breath, or other bodily substance at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath, or other bodily substance shall be admissible." When such a test is performed, however,

[t]he person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.[4]

---

[1] OCGA § 40-6-391 (a) (5).

[2] OCGA § 40-6-391 (a) (1).

[3] In her motion to suppress, Davis also challenged the validity of the roadblock. The trial court concluded that the roadblock was not improper and denied Davis's motion to suppress on that basis. That ruling is not at issue in this appeal.

[4] OCGA § 40-6-392 (a) (3).

If an officer fails to obtain an independent test sought by an accused, "it is incumbent on the trial court to determine whether that failure was justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks the independent test."[5]

> The factors to be considered by the trial court in making the determination, include, but are not limited to, the following: (1) availability of or access to funds or resources to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of requested facilities . . . ; and (5) opportunity and ability of accused to make arrangements personally for the testing.[6]

"Whether the officer made a reasonable effort is a determination which depends largely on local circumstances, circumstances which the trial court can adjudge far better than we."[7]

Here, the trial court found that after Davis requested an independent blood test,

> Johnson told her that she would have to pay for the test (even though he did not know the protocol regarding payment at either of the local hospitals). However, her purse was in the vehicle she had been driving, which had since been driven from the location, and she told Trooper Johnson that she did not have money to pay. The State offered no evidence to show that the Defendant was afforded the opportunity to have her purse brought back to the scene or was given another opportunity to make arrangements to pay for the test. Under these circumstances, the officer did not reasonably accommodate the Defendant's request, and the results of the State-administered breath test are inadmissible.[8]

"[W]e are bound to view the evidence most favorably to uphold the trial court's findings and judgment."[9] Officer Johnson's unilateral determination that Davis would be unable to pay for the blood

---

[5] (Punctuation omitted.) *State v. Anderson*, 258 Ga. App. 127, 128 (572 SE2d 758) (2002).

[6] (Punctuation omitted.) *Ritter v. State*, 306 Ga. App. 689, 690 (1) (703 SE2d 8) (2010).

[7] (Punctuation omitted.) *State v. Metzager*, 303 Ga. App. 17, 19 (692 SE2d 687) (2010).

[8] (Citation omitted.)

[9] *Ritter*, 306 Ga. App. at 691 (1).

test, without confirming the hospitals' policies regarding payment and without offering to accommodate Davis in obtaining a method of payment, was insufficient. As stated in *Butts v. City of Peachtree City*[10] and reiterated in *State v. Anderson*,[11] "[w]hen the officers learned that appellant did not have sufficient cash for a blood test at one of the recommended hospitals, appellant should have been offered the opportunity to use a telephone to make other arrangements."[12] Thus, we conclude that the record supports the trial court's ruling that the State failed to reasonably accommodate Davis's request for an independent blood test.[13]

We are not persuaded by the State's argument that Davis withdrew her request for an independent blood test after Officer Johnson advised her that she would have to pay for the test but failed to allow her the opportunity to make other payment arrangements. As we have previously stated,

> the police cannot escape the duty to reasonably accommo-
> date individuals who have invoked the right to an additional
> test simply because such individuals fail to insist on alter-
> natives, especially when they have not been instructed of
> their responsibility to make such arrangements and that
> failure to do so results in a waiver. It must be remembered
> that such individuals are in police custody and do not have
> free reign to dictate their own actions. Because of the very

---

[10] 205 Ga. App. 492, 494 (2) (422 SE2d 909) (1992).

[11] 258 Ga. App. at 129.

[12] *Butts*, 205 Ga. App. at 494 (2).

[13] See *State v. Howard*, 283 Ga. App. 234, 235-238 (641 SE2d 225) (2007) (affirming suppression of breath test because the officer did not allow the accused to obtain funds to pay for an independent chemical test, nor did the officer provide any assistance other than offering to take the accused to a bank, where the accused did not have sufficient funds in his account to pay for the test); *Cole v. State*, 263 Ga. App. 222, 224 (587 SE2d 314) (2003) (reversing the denial of a motion to suppress because the officer made no effort to ascertain whether hospitals were open or to offer the accused alternative testing measures); *Anderson*, 258 Ga. App. at 128-129 (evidence that the officer failed to allow the accused to make a telephone call or to make other arrangements to pay for an independent blood test supported the trial court's conclusion that the State failed to reasonably accommodate the accused's request); *State v. Brodie*, 216 Ga. App. 198, 199 (2) (453 SE2d 786) (1995) (results of breath test properly suppressed because the police took the accused to a hospital without warning him of the facility's advance payment policy and failed to allow him to make arrangements to secure payment); *Butts*, 205 Ga. App. at 494 (2) (results of breath test should have been suppressed because the accused "was never instructed by the police to personally make arrangements for the test, nor was he allowed the use of a telephone"); *Love v. State*, 195 Ga. App. 392, 393 (2) (393 SE2d 520) (1990) (reversing trial court's failure to suppress breath test results because the officer "was fully aware that the appellant did not have sufficient funds to obtain a blood test at the hospital but nevertheless took him there without warning him of the hospital's advance payment policy, so as to enable him to attempt to make arrangements to secure the necessary funds").

nature of the arrest, their faculties are often impaired, and their actions are largely dictated by the instructions given to them by the police.[14]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED MAY 12, 2011.

*Carroll R. Chisholm, Jr., Solicitor-General, Keenan R. Howard, Assistant Solicitor-General*, for appellant.
*Matthew J. Karzen*, for appellee.

---

[14] *Butts*, 205 Ga. App. at 494 (2).