**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 13, 2015**

# In the Court of Appeals of Georgia

A15A1425. BROWN v. THE STATE.

BRANCH, Judge.

Raymond J. Brown was arrested for driving under the influence of alcohol. He moved to suppress the State's alcohol breath test results. The trial court denied the motion but certified the order for immediate review. We granted Brown's application for interlocutory appeal. For the reasons that follow, we affirm.

On review of a ruling on a motion to suppress, the trial judge's findings of fact should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed in favor of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Jackson v. State*, 258 Ga. App. 806, 807-808 (2) (575 SE2d 713) (2002). "In all cases, [appellate courts] independently apply the law

to the facts." *Drake v. State*, 296 Ga. 286, 288 (2) (766 SE2d 447) (2014) (citation omitted).

Construed in favor of the trial court's decision, the record shows that on December 26, 2013, at approximately 10:18 p.m., Sergeant Long of the Lawrenceville Police Department performed a traffic stop on Brown after seeing Brown driving erratically and in violation of the law. After observing signs suggesting that Brown was intoxicated, Long had Brown perform field sobriety tests, following which Long arrested Brown for driving under the influence of alcohol; Long then read to Brown Georgia's implied consent notice. Brown agreed to take the State's breath test, and Long transported Brown to the Lawrenceville Police Department for that purpose. After the breath test, Brown stated that he wanted a urine test but "he was unsure as to where to obtain a urine test"; he asked Long for a recommendation. Long replied that he could not make such recommendations, and, in response to Brown's request, Long brought Brown two telephone books and allowed him to use the telephone.

Brown called his mother and, while still on the phone, he asked Long if he could be transported to Northside Hospital in Forsyth County. There is no indication that Brown gave Long a reason for making that choice. Long believed that the location was too far away and that the request was unreasonable given all of the

2

facilities that were "in the Gwinnett County area." But not wishing to make that decision alone, Long contacted the on-duty magistrate court judge and asked for the judge's opinion on the matter; the judge told Long that given the number of facilities in Gwinnett County that could provide the testing, it would be unreasonable, in his opinion, to leave Gwinnett County. In addition, Long was the supervisor of the DUI unit and had officers reporting to him, and he therefore did not want to have to travel too far or take too much time from his duties in Lawrenceville. Long told Brown the magistrate's opinion while Brown was still on the telephone with his mother, and Brown then asked to be transported to Emory Johns Creek Hospital; there is no indication that Brown gave Long a reason for choosing that location. Long was of the opinion that this, too, was unreasonable because the location was in Fulton County and he knew it to be farther than some other facilities. Brown, who was still on the telephone, then requested to be taken to the Gwinnett Medical Center in Duluth (GMC-D) because he was familiar with that hospital and had undergone an appendectomy there not long before. Long agreed to the request, and he took Brown there for an independent test; Brown had to call his mother again from the hospital in order to obtain credit card information so that he could pay for the test. Long testified that he did not know the mileage from the police department to the first two

locations that Brown requested, or their addresses. Brown testified that the mileage from the police department to GMC-D was 13.5 miles and that the Emory facility was approximately 3 miles further from the police department. When asked if he ultimately received an "independent test," Brown replied that he had.

OCGA § 40-6-392 (a) (3) provides that a person accused of driving under the influence of alcohol has a right to obtain, in addition to any test administered by the State, an independent chemical test of his blood or urine by a "qualified person of his own choosing." See *Hendrix v. State*, 254 Ga. App. 807, 808 (564 SE2d 1) (2001) (punctuation and footnote omitted). The State has the burden of showing compliance with the statute. *State v. Metzager*, 303 Ga. App. 17, 19 (692 SE2d 687) (2010). The Code provision requires that a suspect is to be given "a meaningful opportunity to choose the testing facility." *Hendrix*, 254 Ga. App. at 808 (footnote omitted). "Nonetheless, if the suspect's choice is unreasonable, a law enforcement officer is justified in refusing to accommodate the request." Id. (footnote omitted). The trial court may consider several factors in resolving this issue, including the following:

> (1) availability of or access to funds or resources to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of [the] requested facilities, e.g., the hospital to

4

which the accused wants to be taken is nearby but in a different jurisdiction; [and] (5) opportunity and ability of accused to make arrangements personally for the testing.

*State v. Buffington*, 189 Ga. App. 800, 802 (377 SE2d 548) (1989); *Lenhardt v. State*, 271 Ga. App. 453, 455 (2) (610 SE2d 86) (2005). An additional factor to be considered is whether the suspect actually made arrangements with a qualified person of his own choosing prior to asking the officer to transport him to that location. *Luckey v. State*, 313 Ga. App. 502, 503-504 (2) (722 SE2d 114) (2012); *Harper v. State*, 164 Ga. App. 230, 231 (1) (296 SE2d 782) (1982). But an officer is not required to ask the suspect "where and by whom she wish[es] the elective test performed." *Luckey*, 313 Ga. App. at 504 2); compare *Akin v. State*, 193 Ga. App. 194, 195 (387 SE2d 351) (1989) (the issue of arrangements was moot where officer refused to transport suspect anywhere other than three designated hospitals). Applying all of these factors, the trial court must determine whether under the totality of the circumstances, the suspects's request was reasonable. *Hendrix*, 254 Ga. App. at 808.

Here, the trial court found that Brown was able to exercise his right to have a chemical test of his blood by a qualified person of his own choosing and that no basis

exists for the exclusion or suppression of the evidence. Although "the mere fact that the requested facility is in another jurisdiction does not justify an officer's refusal to accommodate a suspect," *Hendrix*, 254 Ga. App. at 808 (footnote omitted), Long offered additional facts to justify his refusal to take Brown to the two hospitals located outside of Gwinnett County. Long was willing to take Brown to facilities that were "in the Gwinnett County area"; Long was a supervisor and did not want to travel too far or take too much time away from those reporting to him; the requested facilities were further away than those in the Gwinnett County area; and Long obtained the opinion of a magistrate judge that a request to go to a facility outside of Gwinnett was unreasonable. In addition, Brown did not make arrangements with anyone at the facilities in Fulton and Forsyth to ensure that those facilities were able and willing to perform a test, and, ultimately, Long took Brown to a hospital that Brown selected.

This evidence supported the ruling of the trial court, and we therefore conclude that the trial court did not err by denying the motion to suppress. See *Lenhardt*, 271 Ga. App. at 456 (2) (officer acted reasonably in denying requested facility where requested facility was 13 miles farther than facility ultimately chosen by suspect and

outside of officer's jurisdiction and patrol area; the officer's department was short-staffed; and there were other hospitals in the area of the arrest).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*